DOMINICK MULLANEY

*v.*

JOHN DUFFY.

*Filed at Ottawa, March 31, 1893.*

1. EVIDENCE—*to show boundary—general reputation.* When the location of a private boundary depends upon showing a public boundary, the latter may be shown by proof of common or general reputation. So, when in ejectment to fix the boundary between two lots it becomes a question whether the center of a street is the south line of a quarter section, it is proper to admit evidence tending to show that the center line of the street has been for many years prior recognized and reputed to be line of the quarter section.

2. ESTOPPEL—*by silence of party.* When an estoppel is sought to be established from the silence of a party who in equity and good conscience should have spoken, if there be any ground of estoppel, it is

essential that the party should have had knowledge of the facts, and the other party have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence. If the means of knowledge of the facts are open equally to both parties, the mere silence of the one will not estop him from asserting the facts.

3. BOUNDARY LINE—*adopted by the parties, binding.* This court has frequently held, that when there is an agreement as to the boundary line between two lots or tracts of land, and occupation according to such adopted line, with the making of improvements, each party will be estopped from asserting against the practical location of the line, notwithstanding the bar of the statute of limitation is incomplete. So, also, without proof of such agreement, after the lapse of more than twenty years' uninterrupted acquiescence in a line, the parties will be estopped thereby.

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Mr. C. STUART BEATTIE, for the appellant:

The court erred in admitting evidence that the center of Sixteenth street had been recognized and reputed as the south line of the northwest quarter of the section since 1855. 1 Greenleaf on Evid., secs. 145, 130; Taylor on Evid., secs. 607, 608; *Boardman* v. *Lessees of Reed,* 6 Pet. 328; *Misses Queen* v. *Hepburn,* 7 Cranch, 295.

The boundary line is settled by acquiescence and the conduct of the parties. Wait on Trials of Title to Land (2d Ed.), sec. 869; *Rockwell* v. *Adams,* 6 Wend. 468; *Jackson* v. *Ogden,* 7 Johns. 238; *McCormick* v. *Barnum,* 10 Wend. 109; *Rockwell* v. *Adams,* 7 Cow. 762; *Adams* v. *Rockwell,* 16 Wend. 295; *Columbet* v. *Pacheco,* 48 Cal. 395; *Burris* v. *Fitch,* 76 Cal. 395.

Mr. MATTHEW W. BRADY, for the appellee:

There is a difference between hearsay of a particular fact and general reputation. From the necessity of the case an old boundary can not in general be proved by direct and positive proof; and reputation is, therefore, from necessity, admissible. *Smith* v. *Nowells,* 2 Litt. Rep., 159.

"It is obvious, however, that in this and all other cases where hearsay testimony is admissible, a distinction must be made, as to proving the death of declarants, between particular declarations coming from individuals and general reputation. In the former case death must be proved. In the latter it is never required. The difference is acted upon every day at the circuit, in questions of general reputation upon other subjects." Cowen & Hill's and Edwards' Notes; Phillips' Ev., vol. 1, 223, 224.

The rule that old boundaries may be proved by the common reputation and understanding of the neighborhood where the land lies, would seem better established, and to stand in principle on higher ground, than the one we have been considering, which admits the declarations of deceased persons of competent knowledge, and having no interest, as evidence. *Tate* v. *Southard*, 1 Hawks, 44; *Taylor* v. *Shufford*, 4 id. 116; *Lessee of McCoy* v. *Galloway*, 3 Ham. 282; *Boardman et al.* v. *Lessees, etc.*, 6 Pet. 341.

The same doctrine is held and applied in the following cases: *Cox* v. *The State*, 31 Texas, 1; *Nixon* v. *Porter et al.*, 34 Miss. 697; *Murray* v. *Spencer*, 88 N. C. 357; *McCoy* v. *Galloway*, 3 Ohio, 282; *Smith* v. *Prewitt*, 2 A. K. Marshall, 158; *Noyes* v. *Ward*, 19 Conn. 268; *Harriman* v. *Brown*, 8 Leigh, 697; *Stetson* v. *Freeman*, 35 Kan. 523.

If one of two coterminous proprietors, through mistake, induce the other to build to a wrong line, he is not thereby estopped from a recovery to the true line. *Francois* v. *Malony*, 56 Ill. 399; *Liverpool Wharf* v. *Prescott*, 7 Alton, 494; *Russell* v. *Maloney*, 39 Vt. 579; *Clarke* v. *Hulsey*, 54 Ga. 603; *Thayer* v. *Bacon*, 3 Allen, 163; *Haas* v. *Plantz*, 56 Wis. 105; *Trussell* v. *Lewis*, 13 N. B. 4 and 5; *Brewer* v. *Boston & Worcester R. R. Co.*, 5 Met. 478; *Boldan* v. *Sherman*, 101 Ill. 483; *Shaw* v. *Schoonover*, 130 Ill. 448.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was an action of ejectment by appellee, John Duffy,
against appellant, the real purpose of which was to settle
the boundary line between lot two (2) owned by Duffy,
and lot three (3) owned by Mullaney, of the assessor's
division of part of the N. W. quarter of Sec. 22, T. 39 N.,
R. 14 E., in Cook county.  The respective lots are de-
scribed and conveyed by metes and bounds, and front on
Indiana avenue, in the city of Chicago.  The plaintiff's lot
was described as commencing at a point on the west line of
Indiana avenue, 747 7-10 feet north of the south line of
the northwest fractional quarter of said section 22, and
running thence south on the western line of said avenue
twenty-five feet, thence west, parallel with said south line
of said quarter section, to an alley, running north and south
between Indiana and Michigan avenues, thence north along
the line of said alley twenty-five feet, thence east to the
place of beginning.  The defendant (appellant) owned the
adjoining lot next south of the plaintiff's, and which was
described by metes and bounds as commencing 722 7-10
feet north of the south line of the N. W. quarter of said
Sec. 22, etc., and running thence south twenty-one and
4-10 feet, thence west to a point equi-distant between Mich-
igan and Indiana avenues, thence north twenty-one and
4-10 feet, thence east to the place of beginning.  Both de-
rived title from Mathew Laflin as a common source.  Ap-
pellee purchased of said Laflin in 1866, and appellant in
1867.  Immediately after the purchase, appellant moved
an old frame house upon the property, and in 1868 built a
frame house thereon.  It appears that Duffy, at that time,
was in occupancy also of his lot, but with how much im-
provement does not appear.  The frame house built by
appellant remained upon the lot from 1868 to 1884, when
he built a three (3) story brick building thereon, the north
line of which was a little south, but practically the same as
the north line of the frame house built in 1868.  The claim

of appellee is that this north wall upon Indiana avenue, the northeast corner of the building, is eighteen (18) inches north of the line between said lots; and that the northwest or rear corner of the building is sixteen (16) inches north of said line; and that in the rear of said brick building is a two (2) story frame building, which is over the said line at the northeast corner eight and one-half (8½) inches, and at the northwest corner six and one-half (6½) inches. That is, that the walls of appellant's building are to that extent upon appellee's lot. The brick building is of the depth of fifty-six feet.

A trial without a jury resulted in a finding and judgment for plaintiff for the land described.

The question as to where the true line really is, would depend upon the location of the starting point, that is, the point where Indiana avenue would cross the south line of the N. W. fractional quarter of Sec. 22. It is claimed by plaintiff that the center line of Sixteenth street, at Indiana avenue, is the south line of said quarter section. If this be correct, the line between the lots is where plaintiff claims it to be, and the defendant's buildings are upon plaintiff's lot, as claimed.

The real controversy arose in respect of the location of the south line of said quarter section. Appellee, for the purpose of establishing the location of that line, among other things offered, and the court admitted, evidence tending to show that the center line of Sixteenth street had been recognized and reputed to be coincident with the south line of said fractional quarter. Witnesses were introduced, who were familiar with the locality for many years, dating back as far as 1855, and one of whom, at least, had lived in the immediate vicinity for twenty-four years. Among other questions the witnesses were asked: "Do you know whether or not the middle of Sixteenth street has been commonly reputed to be the south line of said northwest fractional quarter?" They answered, in effect, that the

center line of the street had been recognized and reputed by and among surveyors, and parties interested and knowing about it, ever since their first knowledge of the locality, as being located upon the south line of said N. W. fractional quarter. The reputation called for related to a time long antecedent to the purchase by either of these parties, and extending through a period of practically thirty years. We are of opinion that there was no error in the admission of this evidence. Where the location of a private boundary depends upon showing a public boundary, the latter may be shown by proof of common or general reputation. *Holbrook* v. *Debo*, 99 Ill. 384; 1 Phil. on Ev. (Cow. Hill & Edward's notes), pages 223, 224; *Boardman* v. *Lessees, etc.*, 6 Pet. 341.

The location of the boundary line depending upon the establishment of the south line of the quarter section named, it is insisted that the plaintiff failed to establish, by a preponderance of the evidence, that such line was the center of Sixteenth street. No good purpose would be served by an analysis of the evidence. We have carefully considered it, and are unable to say that the trial judge, who saw and heard the witnesses, and had means of determining their intelligence and reliability, which we have not, erred in the finding of fact in that regard.

It is also contended that the line between the lots is settled by acquiescence. It is not pretended that there was any agreement by which the boundary of the lots was fixed. On the contrary, the making of such an agreement is expressly negatived. And leaving out of view the testimony of appellee, that appellant recognized the line of his building as not being the true line, by agreeing to move his frame building off whenever appellee desired to build, etc., there are no acts or declarations showing affirmative acquiescence, with knowledge of the true boundary.

It is true, that appellee had a survey made in 1871, which showed the frame building then on appellant's premises a

little over the line, but exactly how much is not definitely shown, although appellee thinks it was between ten and twelve inches. Appellant himself testifies that the brick building stands a little farther south than the frame building stood, but how much is nowhere shown. We have frequently held, that where there was an agreement as to the line and occupation to it, with the making of improvements, each party would be estopped from asserting against the practical location of the line, although the bar of the Statute of Limitations was incomplete. *Bauer* v. *Gottmanhausen*, 65 Ill. 499; *Crowell* v. *Maughs*, 2 Gil. 419; *People* v. *Stahl*, 101 Ill. 346. And without proof of an agreement, that after the lapse of more than twenty years' uninterrupted acquiescence in a line, the parties would be estopped thereby. *Fisher* v. *Bennehoff*, 121 Ill. 426; *Schoonmaker* v. *Doolittle*, 118 id. 605; *Sheets* v. *Sweeney*, 136 id. 336. There was here no agreement as to the line, or such acquiescence as has been held to estop the parties from showing the true boundary line.

If it is intended to insist that appellee is estopped by conduct from asserting his right, and if it be conceded that such defense is available at law, the effect of the estoppel being to prevent showing the truth, the rule is that it must be strictly made out. Where the estoppel is sought to be established from the silence of a party, who in equity and good conscience should have spoken, as it is here, if there be any ground of estoppel, it is essential that the party should have had knowledge of the facts, and the other party have been ignorant of the truth, and have been misled into doing that which he would not have done, but for such silence. *Smith* v. *Newton*, 38 Ill. 230; *Com. Ins. Co.* v. *Ives*, 56 id. 402; *Noble* v. *Chrisman*, 88 id. 186; *Hill* v. *Blackwelder*, 113 id. 283. The facts which would have led to accurate knowledge of the boundary between the lots were open equally to the parties, and could be availed of by one as readily as the other. Appellant at no

time sought information from appellee as to the boundary, nor did appellee at any time do or say anything, the effect of which would be to mislead appellant in respect of the same. It is true, that appellee had a survey made in 1871, which, as before stated, he thought showed that the frame building was over upon his lot ten or twelve inches.

About this, however, that is, as to the number of inches, he was not at all definite or certain. After appellant had commenced his brick building, but how long does not appear, appellee asked him if he was certain he was building on the line. Appellant replied that he was, and said, "of course I am on the right line. I had a surveyor to survey it." The evidence tends to show that the house was set by the surveyor's plat, and that the surveyor was the same who made the survey for appellee in 1871. It is to be remembered that no one pretends to know how far south of the north line of the frame building the face of the north wall of the brick building is located.

And it may very well be that appellee thought, as he testifies he did, that appellant knew that he was building upon the line. He says, "I thought he knew, and I did not doubt his word, for he was an old friend of mine, and I thought he knew." There is nothing in the record to impeach this statement, or the good faith of appellee in his belief that appellant was correctly informed as to the line.

Applying the rule before announced, it is apparent that appellee was not estopped from asserting his title.

The judgment of the Superior Court is affirmed.

*Judgment affirmed.*