GEORGE BENZ v. CITY OF ST. PAUL and Others.[1]

February 27, 1903.

Nos. 13,024—(9).

### Boundary Line.

The "practical location" of a boundary line can be established in one of three ways only: (1) The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of action under the statute of limitations; (2) the line must have been expressly agreed upon by the interested parties, and afterwards acquiesced in; (3) the party whose rights are to be barred must, with knowledge of the true line, have silently looked on while the other party encroached thereon, and subjected himself to expense which he would not have done had the line been in dispute.

### Same—Conveyance of Strip—Mistake.

M. and S. owned adjoining city lots, the boundary line between which

[1] Reported in 93 N. W. 1038.

was definitely fixed by the original survey, and also by the plat of which the lots formed part. On the mistaken theory that the building of S. projected over the true line onto the lot owned by M., the latter executed to S. a deed, by which he intended to convey to S. a narrow strip of land within his lot, and adjoining the supposed boundary line, so that the buildings of S. would be wholly upon his own land; but the deed in fact covered a part of the lot owned by S., and the strip thereby conveyed was upon his side of the true boundary. There was no dispute or controversy as to the true boundary line, and it was not intended by the deed to locate or agree upon a lost or uncertain line. The parties supposed they knew the location of the true line, and the transaction evidenced by the deed was founded wholly in a mutual mistake in that respect. *Held* not a practical location of a boundary line. S. was not estopped thereby from asserting title to the true line, either as to M. or plaintiff in this action, who succeeded to his title.

### Evidence.
Evidence *held* not to justify certain findings of fact.

Action in the district court for Ramsey county to determine the boundary line between the lands of plaintiff and defendant Hiram F. Stevens. The case was tried before O. B. Lewis, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendants, Stevens and others, appealed. Reversed.

*Stevens, O'Brien, Cole & Albrecht,* for appellants.

To constitute estoppel in a case like the one at bar, there must have been, when the incorrect line was acted upon, knowledge of the true boundary by one party and ignorance of it by the other, in order to estop the party from asserting it within the period of limitation, and this, though it may have been intended that the incorrect line should be fixed upon as the true one and acted on accordingly; and this, too, it is held, though the admission was in writing, providing the instrument did not operate as a conveyance; and the doctrine of estoppel by standing by and permitting another's property to be sold, or of witnessing a deed to it made by another, supposes a like state of facts. Bigelow, Est. (4th Ed.) 596; see Johnson v. Skillman, 29 Minn. 95; Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co., 51 Minn. 304; Minneapolis W. Ry. Co. v. Minneapolis & St. L. Ry. Co., 58 Minn. 128; Cameron v.

Chicago, M. & St. P. Ry. Co., 60 Minn. 100; 14 Am. & Eng. Enc. (2d Ed.) 84.

Where a boundary has been agreed upon in consequence of an incorrect survey, both parties believing it to be the true line, the acquiescence therein must have continued for a period of time scarcely less than that prescribed by the statute of limitations in order to preclude the owner from asserting his title. Beardsley v. Crane, 52 Minn. 537.

"He who is silent when he should speak, to the injury of another, must be silent when he would speak, even to the injury of himself." In order that the maxim shall be applicable to a case of this sort, viz., the estoppel by expenditure of money on land, it must have three features: First, the person expending the money must honestly suppose himself to be the owner of the land; secondly, the real owner, who encourages the expenditure by his silence, must know that the land belongs to him, and not to the other; and, thirdly, that the other is acting on the erroneous belief as to its ownership. Ramsden v. Dyson, L. R. 1 H. L. 129, 141; Hill v. Epley, 31 Pa. St. 331; Bramble v. Kingsbury, 39 Ark. 131; Sullivan v. Davis, 29 Kan. 28; Tyler, Boundaries, 288-291; Baldwin v. Brown, 16 N. Y. 359; Ewart, Est. 140; Maye v. Yappen, 23 Cal. 306; Thayer v. Bacon, 3 Allen, 163; Dudley v. Elkins, 39 N. H. 78; Hill v. Blackwelder, 113 Ill. 283; Thor v. Oleson, 125 Ill. 365; Perry v. Hardy (N. H.) 51 Atl. 644; Robbins v. Moore, 129 Ill. 30; Leonard v. Spencer, 108 N. Y. 338; Story, Eq. Jur. §§ 619, 1544; Schraeder Mining & Mnfg. Co. v. Packer, 129 U. S. 688; Bigelow, Est. (4th Ed.) 596.

*Munn & Thygeson,* for respondent Benz.

Where adjoining proprietors of land are both ignorant as to the location of the true line, and they fix and agree upon a permanent boundary line, and possession is taken in accordance with the agreement, as in the case at bar, it is not only binding upon the parties to the agreement, but is binding on all persons claiming by, through or under them. And such agreement need not be shown by direct evidence, but may be shown by facts and circumstances, in determining which long acquiescence and recogni-

tion of the line agreed upon by the parties and their privies as the division line become very important factors. Ernsting v. Gleason, 137 Mo. 594; Brummell v. Harris, 148 Mo. 430; Lowndes v. Wicks, 69 Conn. 15; McGee v. Stone, 9 Cal. 600; Knowles v. Toothaker, 58 Me. 172; Helm v. Wilson, 76 Cal. 476; Manistee v. Cogswell, 103 Mich. 602; Jacobs v. Moseley, 91 Mo. 457; Clayton v. Feig, 179 Ill. 534; Flynn v. Glenny, 51 Mich. 580; Joyce v. Williams, 26 Mich. 332; Dupont v. Starring, 42 Mich. 492.

Where the owners of adjoining lots agree to a particular line as the dividing line between them, the agreement is conclusive against them and all persons claiming under them. Sawyer v. Fellows, 6 N. H. 107; Proprietors v. Day, 7 N. H. 457; Eaton v. Rice, 8 N. H. 378; Gray v. Berry, 9 N. H. 473; Prescott v. Hawkins, 12 N. H. 19, 27; Orr v. Hadley, 36 N. H. 575; Dudley v. Elkins, 39 N. H. 78; Bartlett v. Young, 63 N. H. 265; Corrington v. Pierce, 28 Ill. App. 211; Kerr v. Hitt, 75 Ill. 51; Hubbard v. Stearns, 86 Ill. 35; Grim v. Murphy, 110 Ill. 271; Taylor v. Zepp, 14 Mo. 339, 344.

A mutual recognition of a given line by adjoining proprietors accompanied by actual possession of one or both for the period of fifteen years will be conclusive as to their respective rights. Spaulding v. Warren, 25 Vt. 316; Crowell v. Bebee, 10 Vt. 33, 35; French v. Pearce, 8 Conn. 439; Spiller v. Scribner, 36 Vt. 245; Coleman v. Smith, 55 Tex. 254; Smith v. Hamilton, 20 Mich. 433; Joyce v. Williams, 26 Mich. 332; Stewart v. Carleton, 31 Mich. 270; Jones v. Pashby, 67 Mich. 459; White v. Peabody, 106 Mich. 144.

BROWN, J.

Action brought under Laws 1893, c. 68, to determine the boundary line between the lands of the respective parties. Plaintiff had judgment in the court below, and defendants Stevens appealed from an order denying a new trial.

The case was here on a former appeal. 77 Minn. 375, 82 N. W. 1118. The facts are as follows: Plaintiff is the owner of lots 9 to 14, inclusive, of Dawson & Smith's enlargement to Dawson & Smith's addition to the city of St. Paul, having acquired title thereto by conveyance from James T. McMillan, his immediate predecessor in title. Defendant Stevens owns lots 15 and 16, ad-

joining on the west the lots so owned by plaintiff. Defendant's lots front on Sherburne avenue; plaintiff's on Jackson street, the rear of which abut on the east line of defendant's lot 15. The line between lot 15 and plaintiff's property is the boundary sought to be established. Some time prior to 1885 the city of St. Paul, in the improvement of Jackson street, on which plaintiff's lots front, appropriated from the east end of those lots about nineteen feet for street purposes, which was not known to McMillan, who then owned the lots. Subsequently McMillan discovered a shortage in the length of his lots, and supposed that the residence of Stevens, which is situated upon lot 15, projected over upon them, and he so informed Stevens. The parties then caused a survey of the lots to be made, with a view to ascertaining the true boundary line between their respective properties, which, when made, confirmed the theory of McMillan that the dwelling house of Stevens was in fact upon, in part, the former's property; whereupon McMillan executed a deed by which he intended to convey to Stevens a triangular strip off the west end of his lots and along the east line of Stevens' lot 15, four feet and a fraction wide on Sherburne avenue and running to a point in the alley in the rear, for which Stevens paid the sum of about $400; the intention being to convey to Stevens that portion of McMillan's lots upon which it was supposed the former's dwelling house then stood. But the survey was inaccurate, and the deed in fact covered a strip of land along the east side of lot 15. Subsequently McMillan conveyed the lots so owned by him to the plaintiff in this action, the deed conveying which, after describing the property as lots 9 to 14, inclusive, contained the further clause,

"The westerly line of the premises hereby conveyed being the easterly line of the premises conveyed by said first parties (McMillan and wife) to Hiram F. Stevens, by deed dated December 17th, 1885, and recorded October 15th, 1886."

Prior to this conveyance McMillan had erected a fence along the line supposed to have been fixed by his deed to Stevens, and in the erection of his dwelling house upon the lots owned by him plaintiff treated the fence as upon the correct boundary line. There is no evidence that plaintiff was induced to rely upon such line by

any act or declaration of defendant Stevens other than such as might be inferred from the deed from McMillan to him, and that instrument contained no suggestion that the parties intended thereby to fix a boundary line between their respective properties. In 1888 plaintiff erected a stable upon his lots, and near the alley in the rear of defendant's lot 15; and it is claimed, and the court below so found, that Stevens then pointed out to plaintiff a stake on the boundary line between the two properties, and requested plaintiff to build his stable on such line, so that, if defendant at some time in the future should determine to build one for himself, he could make use of plaintiff's west wall; and that, in reliance on this, plaintiff built his stable upon the supposed line, at a cost of about $4,000.

As a matter of fact the true boundary line between the properties as fixed by the original survey and plat is some fifteen feet to the east of the line fixed by the McMillan deed, and plaintiff's stable, and the piers to the carriage porch attached to his residence stand upon lot 15. The whole difficulty and doubt as to the true boundary line arose from the fact that the city appropriated off the east end of the plaintiff's lots about nineteen feet for street purposes, and this fact was unknown to Stevens or McMillan at the time the latter claimed that the residence of Stevens projected over onto his lots.

The trial court found the facts substantially as stated; also that there was a controversy between Stevens and McMillan as to the boundary line between their respective properties, and that, to settle and adjust the same, the deed already referred to, conveying to Stevens the triangular piece of land, was executed; and, further, that defendant pointed out the line so fixed to plaintiff at the time of the erection of his stable, and that plaintiff erected the same with reference to the line so pointed out. As conclusions of law the court held that there was a practical location of the line, and that defendant Stevens is now estopped from disputing the same. The principal question before us is whether the findings in this respect are sustained. If there was no practical location of a different one, the actual boundary as fixed by the original survey and plat must control.

The rule governing the "practical location" of a boundary line was very clearly stated by Justice COLLINS in the case of Beardsley v. Crane, 52 Minn. 537, 545, 54 N. W. 740. He there said:

"Evidence of what is called a 'practical location' of the boundaries of real property is often competent in cases of controversy respecting division lines, and it is sometimes difficult to determine whether such evidence should be received or rejected. Where there can be no real doubt as to how the premises should be located according to certain and known boundaries described in the deed, to establish a practical location different therefrom, which shall deprive the party claiming under the deed of his legal rights, there must be either a location which has been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations, or the erroneous line must have been agreed upon between the parties claiming the land on both sides thereof, and afterwards acquiesced in, or the party whose right is to be barred must have silently looked on while the other party acted or subjected himself to expense in regard to the land, which he would not have done if the line had not been so located. But to establish a practical location which is to devest one of a clear and conceded title by deed, the extent of which is free from ambiguity or doubt, the evidence establishing such location should be clear, positive, and unequivocal. There should be an express agreement made between the owners of the lands, deliberately settling the exact, precise line between them, and acquiescence for a considerable time; or, in the absence of proof of such agreement, it should be as clearly and distinctly shown that the party claiming has had possession of the premises claimed up to a certain, visible, and well-known line with the knowledge of the owner of the adjoining land, and his acquiescence continued for a considerable period of time. What this period is has not been limited or defined, is quite vague and uncertain, and must necessarily depend upon the particular circumstances of each case. It has often been said that this acquiescence must have continued for a period of time scarcely less than that prescribed by the statute of limitations; and in some cases it has been held that the doctrine that an express agreement, recognizing an erroneous boundary line,

will conclude a party, must rest, if tenable at all, upon the principle of estoppel."

Under this decision the practical location of a boundary line can be established in one of three ways only: (1) The location relied upon must have been acquisced in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been expressly agreed upon between the parties claiming the land on both sides thereof, and afterwards acquiesced in; or (3) the party whose rights are to be barred must, with knowledge of the true line, have silently looked on while the other party encroached upon it, and subjected himself to expense in regard to the land, which he would not have done had the line been in dispute.

The first can have no application to the case at bar, for there was no acquiescence in any particular line a sufficient length of time to bar an action to recover possession of the land, which, under our statutes, is fifteen years. Nor can the second have any application, because there was no such an agreement fixing a definite line as will bring the case within the rule of the case just cited. The purpose of the deed from McMillan to Stevens was not to establish or agree upon a boundary line between the properties of the parties. In the execution and delivery of the deed they acted on the theory and belief that the survey made at their instance was correct, and in accordance with the original plat; not on the theory that the true line was lost, or in doubt, for they supposed they knew where it was. There was no dispute or controversy between them, and no such a deliberate settlement of a lost or unknown boundary as to preclude defendant Stevens from now claiming property that is concededly his. The strip of land conveyed to him by McMillan was in fact his own. He bought and paid for his own property. But that transaction was founded wholly on a mistake, and on the supposition that the true boundary line was fixed by the survey upon which the parties then acted. Both relied upon the survey made at that time as correct, and they acted upon it accordingly. McMillan mistakenly supposed that he was conveying to Stevens a part of lots 9 to 14, inclusive, owned by him; and Stevens mistakenly supposed that he

was purchasing and acquiring title to a portion of those lots, when as a matter of fact the deed covered a strip of land near the east line of lot 15, already owned by Stevens. The authorities are very uniform that under such circumstances parties are not bound by an agreement fixing a boundary line between their lands. Guedici v. Boots, 42 Cal. 452; Turner v. Burns, 71 Vt. 354, 45 Atl. 896; Sartain v. Hamilton, 12 Tex. 219, 62 Am. Dec. 524, and cases cited in note; Mullaney v. Duffy, 145 Ill. 559, 33 N. E. 750; Iverson v. Swan, 169 Mass. 582, 48 N. E. 282; Proctor v. Putnam, 137 Mass. 159; Schad v. Sharp, 95 Mo. 573, 8 S. W. 549.

Parties so situated and acting might be bound and concluded, however, as to intervening third persons, on the principles of estoppel; and the important question here involved is whether defendant Stevens is estopped from asserting title to the true boundary line of lot 15 by any conduct on his part. We are of opinion that he is not, except, possibly, to the extent of the land covered by plaintiff's stable. In the erection of his house plaintiff did not act or rely upon any statements of Stevens in reference to the boundary line, but instead upon the deed from McMillan to him. The deed to Stevens did not purport to fix or establish a boundary line, and the deed to plaintiff conveyed lots 9 to 14, inclusive, "according to the recorded plat," and by that plat must be measured the extent of plaintiff's property. The attempt therein to define the boundary line was unknown to Stevens, and he is not bound by it. Defendant Stevens did not know, at the time of the erection of plaintiff's house, the precise location of the true boundary line, and he was not aware of the fact that plaintiff had extended his house over the true line, and he did not knowingly permit him to do so. So far as the erection of the house is concerned, there is clearly no evidence in the record upon which to base an estoppel by conduct. If Stevens knew the true boundary line at the time, and with that knowledge, had permitted plaintiff to erect his house upon his (Steven's) land, he would be conclusively estopped from now disputing the right of plaintiff to maintain his house, where so erected.

It is claimed, however, in respect to the stable; that, before plaintiff commenced the erection of the same he inquired of

Stevens as to the true boundary between their properties; and he testified that Stevens pointed the same out, and in reliance upon the line so pointed out plaintiff erected his stable. We think the evidence on this subject was sufficient to sustain the findings, and to create an estoppel precluding Stevens from now disputing the line so pointed out by him, in so far as it refers to the stable. But from this it does not necessarily follow that Stevens is to be deprived of all the land belonging to him east of the supposed line and up to the true line. He can be estopped only from asserting title to the prejudice and injury of plaintiff, and this extends only to that portion of the lot on which the stable is actually located. Except to this extent, we are of opinion that the findings of the trial court are not sustained by the evidence, and there should be a new trial.

Prior to the trial of this action defendant Stevens and wife executed and delivered to plaintiff an agreement by which they conferred upon him the perpetual right or easement to maintain his stable and the piers of his carriage porch as now located, and it would seem, if this agreement is valid—and Stevens does not question it, but, on the contrary, pleads and relies upon it in defense—that this long pending case should be brought to a close. It cannot be questioned but that, according to the original survey and plat of this addition to St. Paul, the true boundary line is at the point contended for by Stevens, and, as the evidence now before the court (it was properly all presented) is insufficient to estop him from asserting title to that line, except to the extent stated, there is little left for contention between the parties. And inasmuch as Stevens concedes a right and easement in plaintiff to maintain his buildings where now located, the controversy ought to be settled without much further litigation. A judgment according to these conceded rights would fully protect both parties.

Order reversed, and a new trial granted.