JACK FISHMAN v. NIELS L. NIELSEN.[1]

May 16, 1952.

No. 35,668.

[1]Reported in 53 N. W. (2d) 553.

*Johnson & Debel,* for appellant.
*E. V. Molle,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for amended findings and conclusions of law or for a new trial.

According to the findings of the trial court, plaintiff is the record owner of SE¼ of section 8 and NE¼ of section 17, and defendant is the record owner of the W½ of SW¼ of section 9 and NW¼ of section 16, all in township 111 north, range 41 west, in Lyon county; on June 8, 1904, and for some time prior thereto, Jacob Jansen and Theodore Jansen, his brother, as tenants in common, owned the above-described premises now owned by defendant and herein referred to as the north farm; at that time they also owned the SW¼ of section 16 and SE¼ of section 17, which is referred to herein as the south farm; Jacob and his family occupied the north farm, and Theodore and his family occupied the south farm; and on June 8, 1904, Theodore conveyed to Jacob his undivided one-half interest in the north farm and, by that conveyance, reserved for himself, his family, and guests a right of way for travel by cart and wagon on the west one rod of the north farm. It appears from the record that this strip or roadway connected at the north end with a public highway leading into Marshall; that it extended to the buildings on the south farm; and that it was then the only way of ingress and egress to and from the south farm. It was used as a roadway by Theodore, his family, and guests from about 1899, when he acquired the south farm,

until he sold it in 1942 to Weiner Brothers, who took possession in March 1943 and used the road until sometime in the fall of that year, when they built another road leading south from their buildings.

In 1914 and 1915, Theodore and Jacob Jansen and their sons graded and graveled the roadway in question, and it was again regraded in 1935 by defendant, with the aid of Theodore Jansen, who furnished the gravel. Plaintiff claims that he frequently used the roadway himself, but the record indicates that his use of it was rare and mostly confined to times when he shared work with occupants of the south farm or when high water made any other entrance to his farm impassable. He claims also that it was used frequently by the public; but defendant denies this, although the record shows that defendant admits that a number of people did use it in order to do business with the occupants of the south farm.

In 1923, one Ambrose Girard moved onto plaintiff's farm as a tenant, where he continued to live until 1942. He testified that at that time the roadway was there; that it was graveled; that there was no fence on the west side of the road, but that there was a two-wire post fence on the east side close to the road; and that "On the north end there was a short piece of woven wire, about forty rods," which was still there when he left the farm in 1942. He said that he built the fence on the west side of the road in 1923 and 1924, when he received instructions from his landlord, one James H. Wagner, to put the fence as close to the line as he could "without going to any expense of surveying." He explained that he asked the Jansen boys and Jacob Jansen "about where they figured the line was," and that he and Jacob Jansen, who was then occupying defendant's farm, measured and arrived at a line where the west fence was built. He said that his landlord furnished the material for the fence and that he did the work.

On cross-examination, Girard reiterated that his instructions from his landlord were to build the fence "As close as I could get to establishing a line without going to any expense." He explained that the intention was "not exactly" to establish a line, but to

have a fence to keep his stock in his field; that the Jansens had a fence on the other side to keep their stock in their field; "and we left a lane which Jansens used as a road for their use at that time."

Girard said that he maintained the west fence during the time he lived on the farm; but defendant testified that he maintained the north half of the fence from the time he moved onto the farm in 1938, and that when the tenant on plaintiff's farm refused to fix it "we had to fix the lower end, too."

Lars Nielsen, who owned defendant's farm from 1928 to 1932 and occupied it from 1928 to 1938, testified that he considered the west fence to be the dividing line between the lands of plaintiff and defendant during the time he owned the land. Defendant, who moved onto his farm in 1938, said that he regarded the west fence as the western boundary line of his farm.

A survey made by Virgil Johnson, Lyon county surveyor, in July 1950 placed the roadway in question on plaintiff's land, except for a small sliver of the roadway extending over the line and into the W½ of SW¼ of section 9, which claim plaintiff did not press at the trial.

The record shows that defendant plowed up the roadway in 1949 and closed the road. Prior to that, it appears that a dispute arose between the parties hereto in the spring or summer of 1948, when defendant claimed that the roadway was his and plaintiff replied that he had always understood that the road belonged to the three farms. In 1950, plaintiff brought this suit to define and locate the boundary line and establish a permanent monument at a point set out in the complaint.

The case was tried before the court without a jury. The court found for defendant, holding that the west fence constructed in 1923 and 1924 constitutes a practical boundary between the lands of the parties and that defendant and his predecessors acquired the premises lying east of the division fence by adverse possession. Plaintiff appealed from the court's order denying his motion for amended findings or a new trial.

The principal question which we deem necessary to consider for a determination of this case is whether the so-called west fence constitutes a practical boundary between the lands of plaintiff and defendant. It is our opinion that it does. While there is some conflict in the testimony in this connection, we believe that it amply supports the findings of the trial court.

It appears to us that when James H. Wagner, plaintiff's predecessor in title, ordered the construction of the west fence by his tenant Girard in 1923 and 1924 it was his intention, as well as that of the Jansens, who were consulted by Girard, to establish a practical boundary between the farms now owned by plaintiff and defendant. This is corroborated by the testimony of Girard, who said that his landlord told him to put the fence as close to the line as possible without going to any expense of surveying. It is further substantiated by the fact that Girard, before building the fence, consulted the Jansens, especially Jacob Jansen, the then occupant of defendant's farm, to find out "about where they figured the line was." After looking over the property with Jacob Jansen, they then made some measurements, and the so-called west fence was constructed, where it has since remained. Girard constructed the fence, and his landlord furnished the material. It apparently stood there without protest from anyone during the time Girard continued to reside on the farm now owned by plaintiff. It remained there after Girard left the farm in 1942, and was still there when plaintiff purchased the place in 1947. After that, there seems to have been no protest on the part of plaintiff or any dispute between him and defendant with reference to the west fence or the road until sometime in the summer of 1948. It seems clear to us from the record that when the west fence was constructed in 1923 and 1924 the owners of the respective properties attempted and intended to place it as near the dividing line of their farms as possible, without going to the extra expense of having a survey made. Such a situation is not uncommon between the owners of adjoining farms. It also appears to us that Girard, upon the instructions of his landlord and with the assistance of the Jansens,

did arrive at what was considered the dividing line between the farms, and that the fence was constructed on that line. The evidence in that respect seems clear, positive, and unequivocal. The mere fact that Girard also said that the idea of constructing the fence was to keep his stock in his field would not offset the fact that it established a practical boundary. In constructing the fence, it was only normal that one of the purposes must have been to retain stock within the enclosure of plaintiff's farm. It also appears that throughout the years from the time of the completion of the fence in 1924 until sometime in 1948, when a dispute first arose between the parties, plaintiff and defendant and their predecessors in title were satisfied with the location of the west fence; that they acquiesced in its location; and that it did establish a practical boundary.

It is the well-settled law of this state that a practical location often constitutes a boundary line. Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038. It was determined in the Beardsley case that the practical location of a boundary line can be established in one of three ways only: (1) The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been expressly agreed upon between the parties claiming the land on both sides thereof and afterward acquiesced in; or (3) the parties whose rights are to be barred must have silently looked on, with knowledge of the true line, while the other party encroached upon it or subjected himself to expense in regard to the land which he would not have done had the line been in dispute. See, also, Benz v. City of St. Paul, *supra*. The evidence to establish such line, however, must be clear, positive, and unequivocal. Beardsley v. Crane and Benz v. City of St. Paul, *supra;* Markusen v. Mortensen, 105 Minn. 10, 116 N. W. 1021. The effect of a practical location of a boundary line is to divest one of a conceded title by deed, and "the evidence establishing such location should be clear, positive, and unequiv-

ocal." Beardsley v. Crane, 52 Minn. 546, 54 N. W. 742; Marek v. Jelinek, 121 Minn. 468, 141 N. W. 788.

Einung v. Schlopkohl, 129 Minn. 9, 151 N. W. 273, was an action involving a boundary line between the lands of the parties, and the question was whether the evidence supported the findings of the trial court to the effect that theretofore there had been a practical location of such a line by the owners of the land adjoining the line. While that case differs somewhat from the one at bar, in that there the trial court found that prior to the year 1890 the owners of the adjoining land caused a survey thereof to be made for the purpose of locating and establishing the true boundary line between their respective lands, the findings further showed that a line was thus located; that a fence was constructed thereon; and that for more than 20 years all of the parties acquiesced in the line so established as the true division line between the lands in question. It appeared there that no dispute occurred until about the time of the commencement of the action, which was decided by this court in 1915. It further appeared from the evidence that the true line was unknown to the parties at the time of the location thereof. Upon appeal, this court held that the findings clearly brought the case within the rule of practical location as theretofore applied by our decisions, citing Beardsley v. Crane and Benz v. City of St. Paul, *supra;* Nadeau v. Johnson, 125 Minn. 365, 147 N. W. 241; County of Houston v. Burns, 126 Minn. 206, 148 N. W. 115. We further held that, while the evidence to support the finding of acquiescence for 20 years may not have had full support, yet the time of acquiescence in the line agreed upon was not of controlling importance, since the evidence was reasonably clear that the parties who so acquiesced in the line established at their instance had recognized and treated it as the true line for over 15 years.

It is our opinion that the evidence is clear, positive, and unequivocal that the line established by Wagner's tenant, Girard, at the former's request, and the Jansens in 1923 and 1924, when the west fence was constructed, was acquiesced in for at least 18 or 19 years, while Girard continued to live on the farm and until

about 1948, when the first dispute appears to have arisen between plaintiff and defendant. We therefore hold that the line agreed upon when the west fence was constructed in 1923 and 1924 established a practical boundary throughout the years, as it was known, definite, certain, and capable of ascertainment. 8 Am. Jur., Boundaries, § 80.

We have already set out the three ways in which a practical location of a boundary line can be established, as decided in cases cited above in that connection. It is our opinion that such a practical location has been clearly, positively, and unequivocally established in the instant case in at least one of those ways, to wit, the location relied upon was acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations, and we so hold.

Plaintiff argues that, since there is nothing in the record to show that either party had knowledge of the true boundary line, no practical boundary line can be established. To support this contention he relies on Simms v. Fagan, 216 Minn. 283, 12 N. W. (2d) 783. While we do not regard that case as controlling on the point under consideration here, this court did say in that case that in order to establish practical location of a boundary by acquiescence it must appear that such acquiescence was with the knowledge of the exact boundary line as described in the instrument of conveyance; that the claim of practical location rests upon the principle of estoppel; and that, without evidence of knowledge, one of the essential elements to create an estoppel is missing. In connection with that point, this court in the Simms case referred to Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038, *supra*.

In passing on that question in the Benz case, the court had a situation different from the one at bar. There, defendant did not know at the time of the erection of plaintiff's house the precise location of the true boundary line, and he was not aware of the fact that plaintiff had extended his house over the true line and did not knowingly permit him to do so. The court said there that so far

as erection of the house was concerned there clearly was no evidence in the record upon which to base an estoppel by conduct.

We do not regard that situation as comparable to the one before us, where an apparent conscientious effort was made between Wagner, his tenant Girard, and the Jansens to establish a practical location by the construction of a fence, which was acquiesced in by the owners of the land for many years. We can find no reason for this requirement of knowledge of the true boundary line in our review of decisions in other states, and we can see no practical reason here why it should be a prerequisite to establishing a practical boundary line by acquiescence. If it is true that knowledge of the true boundary line would be a prerequisite to establishing a practical boundary by acquiescence, we can see little or no reason why there should be an occasion for establishing a practical boundary by acquiescence, inasmuch as it seems logical that a fence such as the one in question would have been placed on the true boundary line if all the parties concerned knew exactly where such a line was at the time the fence was constructed.

The trial court found also that defendant had acquired the premises in dispute by adverse possession, as well as by practical location of the boundary. We cannot agree that all the necessary conditions to establish boundary by adverse possession are present in the case at bar. There are five essentials of adverse possession. It must be hostile, actual, open, continuous, and exclusive. Village of Newport v. Taylor, 225 Minn. 299, and note 2, 30 N. W. (2d) 588, and note 1. Since, however, it is our opinion that the record sustains a finding that the west fence clearly established a practical boundary, which was acquiesced in for more than 20 years, we deem it unnecessary to decide the case on other grounds.

In view of our decision here, we find no reversible error in connection with plaintiff's objections to the admissibility of defendant's exhibit 3 or of testimony by defendant or his predecessor in title that they regarded the west fence as the boundary line, since the record here satisfies us that a practical location was clearly, positively, and unequivocally established by the erection of the

west fence and that this location was acquiesced in for about 24 years, a time more than sufficient to bar a right of entry under the statute of limitations.

Affirmed.

