**Randolph J. LeeJOICE, et al.,**
**Respondents,**

v.

**Henry Leon HARRIS, et al., Appellants,**

**Doris L. Stanger, et al., Defendants.**

**No. C4–86–1696.**

Court of Appeals of Minnesota.

April 14, 1987.

Douglas P. Anderson, Little Falls, for respondents.

Robert R. Alderman, Brainerd, for appellants.

Considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a trial court judgment determining the boundary line between the parties' property. Appellants claim the trial court erred because they own certain land by either (1) adverse possession or (2) practical location of the boundary. We affirm.

## FACTS

This action to establish the boundary between the parties' property concerns land off the shore of Lake Mille Lacs in northern Minnesota. An east-west line divides the northern property possessed by respondents, who own the Mille Lacs Motel, from the southern property possessed by appellants, who own the Pike Point Resort.

Respondents Sundberg and their vendees, the LeeJoices, sued appellants in 1985 after having the boundary line surveyed on May 15, 1984. Appellants claim to own by adverse possession or practical location of the boundary a triangular parcel of land separating the parties' acreage.

The confusion regarding the triangular parcel began in 1961 when appellants Schuman purchased the southern property. They were told their northern property line extended from a sign erected on the eastern property edge along a sight line lying 10 feet north of appellants' cement block building. That physical description was passed on to each subsequent appellant purchaser. The 1984 survey revealed the cement block building actually lies almost entirely on respondents' property and the division line extends due westerly rather than northwesterly as described to appellants. When respondents Sundberg purchased in 1961, they believed the property line transected the cement building.

During appellants Schuman's ownership between 1961–71, their use of the border area was quite limited. In 1961, they stored three fishhouses to the north of the cement building and began mowing the area 10 feet north of the building. For a brief period in 1961, they used a garbage dump located off a trail leading northwesterly from behind the cement building. Much of appellants' property to the west and northwest was left in a wild and natural vegetative state.

The Schumans and the Sundbergs reached an agreement shortly after purchasing regarding maintenance of the area north and east of the cement building. They decided to keep this area mowed so that it was presentable and allowed for travel between the motel and the resort. Motel patrons would often eat at the resort. As part of the agreement, motel customers were allowed to use the resort's road to the lake to access boats and fishhouses. Generally, respondent Sundberg stated he had no objection to Schuman working on what Sundberg believed to be his property.

When the Aarsvolds, and later appellants Drahosh, subsequently owned the southern acreage, respondent Sundberg spoke with each of them regarding sharing the cost of a survey. A survey was not made in those years, however, because of the expense.

After appellants Lee purchased the Pike Point Resort and its property in 1976, they began to store fishhouses east of the cement building. Respondent Sundbergs complained and the Lees moved the fishhouses.

Appellants Harris purchased on a contract for deed in 1980. In September 1980, Sundberg confronted the Harrises about their application for a trailer court near the boundary line. In late 1980, appellants Harris began clearing an area northwest of the resort for a drainfield. Sundberg confronted Harris regarding its location and the boundary line. Sundberg said he thought the field might be on his property.

Appellants Harris increased their use of the disputed area by additional methods. They began selling gravel from a pit located northwest of the resort. From an area west of the gravel pit, they began gathering fallen firewood for use at the resort, removing an average of 10–12 cords per year. The Harrises also began using the garbage pit and stored campers and trailers east of the cement building.

After a court trial, judgment was filed on July 21, 1986. The trial court held respondents are lawful owners of all land north of the May 1984 survey line, except:

> Property, south of the sightline, extending from the resort sign to a point 10 feet north of the cement building, continuing to a point 10 feet west of said building.

Appellants were enjoined from using the garbage pit and the drainfield, cutting or collecting firewood north of the boundary line, and storing fishhouses or other structures or vehicles on respondents' property.

## ISSUE

Was the evidence sufficient to show appellants are not titleholders to certain land by adverse possession or practical location of the boundary?

## ANALYSIS

At the close of trial, the trial court permitted appellants to amend their counterclaim regarding the disputed triangular parcel to include the theory of practical location of a boundary in addition to their adverse possession claim. The trial court judgment rejected appellants' counterclaim on both theories of law, except as concerns the area surrounding and extending east of the cement block building. Appellants claim ownership of the entire triangular parcel under both theories.

1. *Adverse Possession.*

Before title by adverse possession can be obtained, the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the statutory 15–year period. *See Engquist v. Wirtjes,* 243 Minn. 502, 504, 68 N.W.2d 412, 415 (1955);

Minn.Stat. § 541.02 (1984). The evidence must be strictly construed, "without resort to any inference or presumption in favor of the disseizor, but with the indulgence of every presumption against him." *Village of Newport v. Taylor,* 225 Minn. 299, 303, 30 N.W.2d 588, 591 (1948).

*Lechner v. Adelman,* 369 N.W.2d 331, 334 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Aug. 29, 1985).

The trial court stated:

> Because this suit was brought in 1985, the court must concern itself with activity on the land that took place as far back as 1970.

But appellants argue the relative time period is between 1960–76. The statutory period need not be those years immediately preceding commencement of the action. The 15–year period need only be completed prior to the beginning of the action. *See Dean v. Goddard,* 55 Minn. 290, 293–94, 56 N.W. 1060, 1060–61 (1893).

Nonetheless, appellants fail to establish actual possession of additional property to that granted by the trial court for any 15–year continuous period prior to 1985. The Schumans' most extensive possession occurred in 1961 when they made use of the garbage pit. From 1962–71, their possession did not expand west or north of the area surrounding the cement building. That area was left in a wild condition. *See Nash v. Mahan,* 377 N.W.2d 56, 58 (Minn.Ct.App.1985) ("One who leaves land in a wild and natural state cannot acquire title by adverse possession.").

While the Lees briefly stored fishhouses to the east of the cement building, it was not until the Harrises purchased in 1980 that appellants' possession of the triangular parcel increased by gathering of firewood, use of the garbage pit, use of the gravel pit and construction of the drainfield. Appellant Harris' expanded possession is too limited in time, however, to demonstrate ownership by adverse possession.

■ 2. *Practical Location.*

The practical location of a boundary line can be established in one of three ways:

(1) Acquiescence: The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations.

(2) Agreement: The line must have been expressly agreed upon by the interested parties and afterwards acquiesced in.

(3) Estoppel: The party whose rights are to be barred must have silently looked on with knowledge of the true line while the other party encroached thereon or subjected himself to expense which he would not have incurred had the line been in dispute.

*E.g., Theros v. Phillips,* 256 N.W.2d 852, 858 (Minn.1977); *Phillips v. Blowers,* 281 Minn. 267, 269, 161 N.W.2d 524, 526 (1968).

*Wojahn v. Johnson,* 297 N.W.2d 298, 304 (Minn.1980). Appellants claim ownership of the triangular parcel pursuant to either acquiescence or estoppel. They have the burden of establishing the practical location by clear, positive and unequivocal evidence. *See Theros v. Phillips,* 256 N.W.2d 852, 858 (Minn.1977).

■ Appellants' estoppel argument fails because no one knew the true boundary line until the May 1984 survey. *See Wojahn,* 297 N.W.2d at 304 n. 2 (knowledge of true boundary line necessary element of proof).

Regarding acquiescence, the trial court stated while respondents acquiesced in appellants' sightline as the true boundary for the requisite 15 years, appellants did not make requisite use of the triangular parcel for the 15-year period.

It must be kept in mind that the acquiescence required is not merely passive consent to the existence of a fence or sod strip, but rather is conduct or lack thereof from which assent to the fence or sod strip as a boundary line may be reasonably inferred.

*Engquist v. Wirtjes,* 243 Minn. 502, 507–08, 68 N.W.2d 412, 417 (1955).

■ Merely failing to dispute a sightline as a true boundary line is insufficient to constitute acquiescence sufficient to bar ownership of disputed property. Acquiescence entails affirmative or tacit consent to an action by the alleged disseizor, such as construction of a physical boundary or other use, which tends to establish the visual to boundary. Here, while uses by the Harrises of the triangular parcel were tacitly consented to by respondents, the acquiescence did not exist for the requisite 15 years prior to commencement of the action.

## DECISION

The trial court did not err in determining the parties' boundary line.

Affirmed.