**PRATT INVESTMENT COMPANY, Appellant,**

v.

**John D. KENNEDY, et al., Defendants,**

**Lake Vadnais Free Church of St. Paul, Respondent.**

**No. C6–01–664.**

Court of Appeals of Minnesota.

Dec. 18, 2001.

Robert A. Alsop, Larry M. Wertheim, Bonnie L. Wilkins, Kennedy & Graven, Chartered, Minneapolis, MN, for appellant.

Fred A. Kueppers, Jr., Kueppers, Hackel & Kueppers, P.A., St. Paul, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge, ANDERSON, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY,* Judge.

In this boundary dispute, appellant challenges the referee's refusal to rule that it

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

had acquired land via practical location of boundaries by acquiescence. Appellant alleges that the referee (1) misapplied the law by confusing the doctrine of practical location of boundaries by acquiescence with adverse possession, and (2) ignored evidence of acquiescence. Because the referee correctly found no clear and convincing evidence of acquiescence, we affirm. We also affirm the denial of respondent's request for rule 11 sanctions.

## FACTS

The facts of this appeal are largely undisputed. Appellant Pratt Investment Company and respondent Lake Vadnais Free Church own neighboring tracts of land. In the early 1960s, respondent ordered a survey of its property (Georgi survey). This survey marked the property's eastern boundary line 50 feet west of the recorded property line and identified two monuments along the northern part of the survey line. In 1964, Pastor Anvie Peterson of respondent church poured concrete around one of the monuments, either to preserve the monument or to mark the boundary.

In 1991, appellant ordered a survey of its property (Kemper survey), which concluded that the previously identified line, the Georgi line, was probably the common boundary between the two properties, although the easternmost line was also a possibility. In 1994, respondent ordered a new survey of its land (Carley–Torgersen survey), which concluded that the easternmost line was the common boundary.

In August 1996, appellant sued to acquire the area between the westernmost line and the easternmost line (e.g., the disputed area), principally alleging adverse possession and practical location by acquiescence, and respondent requested rule 11 sanctions. In January 2001, the referee[1]

1. The district court ordered a trial by referee.

ruled in favor of respondent, finding insufficient evidence of either adverse possession or practical location, but denied sanctions. This appeal followed.

## ISSUES

I. Did the referee confuse adverse possession with practical location of boundaries by acquiescence, by erroneously requiring appellant to prove possession?

II. Did the referee err by concluding that appellant did not establish its claim of practical location by acquiescence?

III. Did the referee abuse his discretion by not awarding respondent rule 11 sanctions?

## ANALYSIS

### I.

The legal theories of adverse possession and practical location are not interchangeable. *See Denman v. Gans*, 607 N.W.2d 788, 796 (Minn.App.2000) ("Although the doctrine of practical location, at least in effect, is similar to acquiring title by adverse possession, the two theories are distinct and require proof of different elements."), *review denied* (Minn. June 27, 2000); *see also Engquist v. Wirtjes*, 243 Minn. 502, 507, 68 N.W.2d 412, 417 (1955) (stating practical location is "independent of adverse possession"). A reviewing court is not bound by and need not give deference to a referee's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. State, Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). The application of law to stipulated facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

Appellant argues that the referee inappropriately dismissed its practical location claim based upon a lack of possession or occupation and that, unlike adverse possession, practical location by acquiescence does not require possession. A boundary line may be established by practical location in one of three ways:

(1) The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been expressly agreed upon between the parties claiming the land on both sides thereof and afterward acquiesced in; or (3) the parties whose rights are to be barred must have silently looked on, with knowledge of the true line, while the other party encroached upon it or subjected himself to expense in regard to the land which he would not have had the line been in dispute.

*Gifford v. Vore*, 245 Minn. 432, 436, 72 N.W.2d 625, 628 (1955). While case law does not say that "possession" is an element of establishing a boundary by practical location, "[a]cquiescence entails affirmative or tacit consent to an action by the alleged disseizor, such as construction of a physical boundary or other use * * *." *LeeJoice v. Harris*, 404 N.W.2d 4, 7 (Minn. App.1987). Implicit in the case law is the notion that the disseizor has claimed, by way of some action, that a boundary has existed for the statutory period, and the disseized has acquiesced to that boundary. Here, the referee concluded:

The sheep rearing by John Mitchell, a predecessor in [appellant's] title, was not of a sufficient character or duration to be the clear and convincing evidence of occupation as required for adverse possession or practical location * * *.

The referee further held that, because the disputed land was vacant and heavily wooded, "there is no possession on the part of either party to constitute grounds for adverse possession or to establish the boundary by practical location."

The referee correctly reasoned that appellant's nonuse of the disputed land was relevant to establishing a practical location by acquiescence claim. While the findings seemingly apply more toward appellant's adverse possession theory, they also refute appellant's practical location claim. For example, if appellant has not used or possessed the disputed land, respondent cannot have acquiesced to any supposed boundary. *See Engquist*, 243 Minn. at 507–08, 68 N.W.2d at 417 (holding that the required acquiescence is not passive consent to a boundary, but rather conduct or lack thereof from which assent may be reasonably inferred). In addition, if appellant or his predecessor never substantially used or possessed the disputed territory, appellant can hardly claim that he has "relied" upon any supposed boundary for purposes of the practical location doctrine. *See Fishman v. Nielsen*, 237 Minn. 1, 6, 53 N.W.2d 553, 556 (1952) (explaining that "the location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations").

## II.

To acquire land by practical location of boundaries by acquiescence, a person must a show by evidence that is clear, positive, and unequivocal that the alleged property line was "acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations." *Theros v. Phillips*, 256 N.W.2d 852, 858 (Minn.1977). The statute of limitations is 15 years. Minn.Stat. § 541.02 (2000); *see Allred v. Reed*, 362 N.W.2d 374, 376 (Minn. App.1985) (citing Minn.Stat. § 541.02 in practical-location case), *review denied* (Minn. Apr. 18, 1985). A referee's findings

on the practical location of a boundary "will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence." *Gifford*, 245 Minn. at 434, 72 N.W.2d at 627; *see* Minn. R. Civ. P. 52.01.

Appellant claims that respondent acquiesced to the westernmost line because (1) respondent ordered a 1964 survey that delineated the westernmost line as the common boundary; and (2) respondent fortified artificial landmarks on the westernmost line. Appellant's argument is inconsistent with established case law.

Acquiescence exists when adjoining landowners, for example, mutually construct a fence with the intention that the fence represents an adequate reflection of the property line. *Fishman*, 237 Minn. at 7–8, 53 N.W.2d at 555–56 (finding practical location by acquiescence when parties and their predecessors in title built dividing fence as close as possible to actual boundary and remained satisfied with fence's location for statutory period); *Allred*, 362 N.W.2d at 376–77 (finding practical location by acquiescence when disseizor built fence with intent to be as close to boundary as possible and when disseized treated fence as boundary); *In the Matter of Zahradka*, 472 N.W.2d 153, 156 (Minn.App. 1991) (finding practical location by acquiescence when disseizor builds parking lot on disseized's land and disseized makes no claim to ownership of land for forty years), *review denied* (Minn. Aug. 29, 1991).

The acquiescence required is not merely passive consent, but conduct from which assent may be reasonably inferred. *Engquist*, 243 Minn. at 507–08, 68 N.W.2d at 417 (affirming no practical location finding absent evidence that disseized or predecessors recognized or treated a fence as a division line, or that disseizor or predecessors used the disputed land); *LeeJoice*,

404 N.W.2d at 7 (no practical location by acquiescence when disseizor does not use disputed area for statutory period, even though disseized "tacitly consented" to boundary by failing to dispute a sightline).

Nor is there acquiescence when landowners erect markers or physical barriers that are not intended to identify boundaries. *See Gifford*, 245 Minn. at 436, 72 N.W.2d at 628 (no acquiescence when disseizor believes line of rocks to be boundary line but never asserts it as the boundary to adjacent landowner); *Wojahn v. Johnson*, 297 N.W.2d 298, 305 (Minn. 1980) (erecting fence for uncertain purpose did not establish acquiescence); *Weis v. Kozak*, 410 N.W.2d 903, 906 (Minn.App. 1987) (constructing fence to restrain cattle, rather than as boundary line, did not establish acquiescence). When a landowner unilaterally builds a fence on his own land, not intending it to be the true boundary, an adjacent owner who has had nothing to do with its location, construction, or use should not rely on the fence as a division line by implied agreement or acquiescence. *Roy v. Dannehr*, 124 Minn. 233, 237–38, 144 N.W. 758, 760 (1914).

The referee correctly concluded that appellant did not put forth clear and convincing evidence of acquiescence. The referee found, for example, that appellant's predecessor's sheep rearing on the disputed property "was not of a sufficient character or duration to be the clear and convincing evidence of occupation as required for adverse possession or practical location * * *." Thus, there was insufficient evidence that appellant or its predecessors used the disputed land or relied on the 1964 boundary. And contrary to what appellant argues, the disseizor must take some action with or make some use of the disputed land. Otherwise, there would be nothing to which the disseized could acquiesce. Also, there was no clear and

convincing evidence that respondent intended the 1964 markers to constitute a boundary line. For example, respondent witness Pastor Anvie Peterson gave conflicting testimony.

Q: What was your understanding of the import of that stake that Mr. Georgi had placed there? * * * He put one in and what was he telling the world when he put the stake there?

A: All I know is that I didn't think that it was substantial enough to remain, so I put the marker in that is usually put in.

* * *

Q: And the purpose of [reinforcing the Georgi marker] was to mark the boundary line; is that correct?

A: Yes.

 Practical location by acquiescence usually occurs when neighbors attempt to establish a fence as close to the actual boundary as possible, or when the disseizor unilaterally marks the boundary, and the disseized neighbor thereafter recognizes that line as the actual boundary. Here the parties had no agreement as to a common boundary, and each commissioned separate and independent surveys. Moreover, respondent unilaterally established the markers in 1964. As the court in *Roy v. Dannehr* explained,

Our decisions are to the effect that one is not to be deprived of his land because he, through mistake or ignorance, placed a fence on what he thought was the division line, when it was not such in fact, unless the evidence of practical location, or acquiescence for at least 15 years is clear, positive, and unequivocal.

124 Minn. at 237–38, 144 N.W. at 760 (citations omitted). Equity does not permit appellant to profit from another's mistake.

### III.

 Minn. R. Civ. P. 11 "provide[s] relief to parties who are victims of bad pleading and abuse of process." *State Bank of Young Am. v. Fabel*, 530 N.W.2d 858, 863 (Minn.App.1995), *review denied* (Minn. June 29, 1995). Under rule 11, an attorney has an affirmative duty to investigate the factual and legal basis for claims and assure that no claim is brought for an improper purpose. *Radloff v. First Am. Nat'l Bank*, 470 N.W.2d 154, 156 (Minn. App.1991), *review denied* (Minn. July 24, 1991). The purpose behind rule 11 is deterrence, not punishment or cost shifting. *Kellar v. Von Holtum*, 605 N.W.2d 696, 702 (Minn.2000). Sanctions under rule 11 require a finding of bad faith. *Whalen v. Whalen*, 594 N.W.2d 277, 282 (Minn.App. 1999). Rule 11 should be narrowly construed and "while some sanctionable conduct might escape discipline, that is preferable to deterring legitimate or arguably legitimate claims." *Leonard v. Northwest Airlines, Inc.*, 605 N.W.2d 425, 432 (Minn. App.2000) (citation omitted). We review a rule 11 sanction under an abuse-of-discretion standard. *Id.*

 Respondent argues that, upon remand for rule 11 sanctions, it would submit evidence that appellant has long tried to acquire respondent's property. But respondent never brought this information to the referee's attention and this court will not consider matters not argued and considered in the court below. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (reviewing court generally considers only those issues presented and considered by trial court). Respondent also argues that appellant should be sanctioned because it had no evidentiary or legal support for its adverse possession, practical location, or other claims. While the referee stated that this was "a close case," the evidence is notable by its scarcity. Never-

theless, because some evidence of practical location and adverse possession existed, and because the decision to grant sanctions is discretionary, the referee did not abuse his discretion in denying sanctions.

## DECISION

The referee did not confuse the doctrine of practical location by acquiescence with adverse possession because, under the circumstances of this case, appellant's nonuse of the disputed land was relevant to both claims. Also, respondent's unilateral construction of two stakes, without any proof that respondent intended or permitted them to act as a boundary line, cannot constitute clear, positive, and unequivocal evidence of acquiescence. Appellant's case was not so frivolous, however, that it should pay sanctions, and thus the referee did not abuse his discretion in denying respondent's rule 11 motion.

**Affirmed.**