KRISTEN MARKUSEN and Others v. C. P. MORTENSEN.[1]

June 26, 1908.

Nos. 15,658—(104).

**Boundary Line—Bed of Vanished Lake.**

Action to determine the boundary lines between the lands of the respective parties, which consisted of the bed of a meandered lake, the waters of which had disappeared. The trial court apportioned the lake bed and fixed the boundaries in accordance with the rule of this court. The defendant claimed title to portions of the bed not awarded to him, on the ground of a practical location of the boundary lines thereof and by adverse possession. Neither claim was allowed by the trial court. *Held.* that the evidence was not sufficient to require a finding in favor of the defendant's claims, or either of them, and, further, that the court did not err in excluding an offer of testimony as to an alleged agreement respecting the boundary lines, for the reason that the offer was too narrow.

Action in the district court for Lincoln county between all the owners of land abutting on the bed of a meandered lake, the waters of which had disappeared, to determine their respective boundaries. The case was tried before Quinn, J., acting for the judge of the Ninth judicial district, who made findings and with the consent of all parties appointed a surveyor to ascertain the center of the lake and apportion to the several lots abutting thereon their proportionate share of the bed of the lake. The surveyor reported to the court the result of his survey, with a plat showing the apportionment made by him to each lot, and the plat was made a part of the order for judgment. From the judgment entered in accordance therewith, defendant appealed. Affirmed.

*John McKenzie* and *Eckstein & Flor,* for appellant.
*John H. Brown* and *M. E. Mathews,* for respondents.

START, C. J.

This action was brought in the district court of the county of Lincoln for the purpose of having the boundary lines between the lands of the respective parties hereto determined. The land of all the par-

[1] Reported in 116 N. W. 1021.

ties lies in township 109, range 44, Lincoln county. The court determined the boundary lines, and judgment was entered accordingly, from which the defendant appealed.

The complaint alleged, in effect, that the plaintiff Kristen Markusen was the owner in fee and in possession of lots 1 and 2, in section 17; that the plaintiff Marie Kruse was the owner in fee and in possession of lots 4, 5, 6, 7, and 8, in section 8; that the plaintiff Jens Nielsen is the owner in fee and in possession of lot 1 in section 18; that the defendant is the owner in fee and in possession of lots 3, 4, and 5, in section 17; that these tracts of land originally abutted upon a meandered lake lying in sections 8 and 17, the waters of which, since the government survey, have gradually receded and disappeared, leaving the bed of the lake dry land; and, further, that such tracts are the only tracts of land abutting upon the lake, and the parties hereto are the only persons interested, as owners or otherwise, in the lake bed, but they are unable to agree upon a division thereof or the proper boundaries of their respective portions.

The answer admitted that the lake had dried up and that the defendant was the owner of lots 3, 4, and 5, but put in issue the other allegations of the complaint, and alleged that he was the owner of that part of the bed of the lake which was in controversy by adverse possession and by a practical location by all the abutting owners of the boundary lines thereof. This was denied by the reply.

On the trial the defendant admitted that the allegations of the complaint as to the ownership of the land abutting on the lake were true. This put upon the defendant the burden of affirmatively establishing by competent evidence that he had acquired title to the part of the bed of the lake here in question, either by adverse possession or by a practical location of the boundary lines, as alleged in his answer. The trial court did not directly find upon the question of defendant's adverse possession, or whether there had been a practical location of the boundary lines by the agreement and action of the parties. The court, however, did specifically find and describe by metes and bounds the particular portion of the bed of the lake owned by each of the parties hereto by reason of his ownership of the lots abutting upon the meander line of the lake. This was necessarily a finding to the effect that neither of the claims of the defendant was sustained by the

evidence. The defendant here concedes that the division of the lake bed and the prescribed boundary lines, as made and established by the court with the assistance of a surveyor appointed to make a survey, are correct, unless the evidence establishes one or both of his claims. The question, then, for our decision, is whether the finding of the court against the respective claims of the defendant was justified by the evidence, within the rule applicable to such questions.

The law relevant to a practical location of boundary lines is substantially stated by counsel for appellant in their brief; but the evidence to establish such location must be clear, positive, and unequivocal. Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038. The evidence, which was conflicting, was not sufficient to bring the case within this rule, and to require the trial court to find in favor of the defendant on this question. We accordingly hold that the finding of the trial court on the claim of a practical location is sustained by the evidence.

The next question is whether the evidence was sufficient to require a finding in favor of the defendant on his claim of title by adverse possession. The lake, at the time the government survey was made, covered two hundred seventy-one acres of land. It was nearly all in the south half of section 8 and the north half of section 17, and its contour was irregular. The defendant's lots consisted of so much of the northwest quarter and the west half of the northeast quarter of section 17 as was not originally covered by the lake. The plaintiff Markusen's lots consisted of so much of the east half of the northeast quarter of section 17 as was not originally covered by the lake. The plaintiff Kruse's lots consisted of so much of the southeast quarter and the south half of the southwest quarter of section 8 as was not originally covered by the lake. The plaintiff Nielsen's lot consisted of so much of the northeast quarter of the northeast quarter of section 18 as was not originally covered by the lake. The defendant claimed on the trial that he was the owner of the whole two hundred forty acres of which his lots were a part. The trial court, however, awarded to each of the parties hereto only so much of the bed of the lake as he was entitled to by reason of his ownership of the lots abutting upon the lake, and appointed a surveyor to ascertain the center of the lake and apportion to the several lots abutting thereon their propor-

tionate share of the bed of the lake, in accordance with the rule established by this court. Shell v. Matteson, 81 Minn. 38, 83 N. W. 491. The surveyor performed the duty and reported to the court the result of his survey, with a plat showing the part of the bed of the lake apportioned to each abutting lot, and its boundary lines and its area. The trial court made the plat a part of its order for judgment. The following is a copy of the plat:

MAP OF MEANDERED LAKE BED IN SECTIONS 8, 17, AND 18, T. 109 N., R. 44 W., SHOWING SUBDIVISION OF LAKE BED

This plat shows that the center of the lake was fixed by the survey at a point four hundred sixty feet due south of the south quarter corner of section 8; that the defendant's share of the bed of the lake is included within a line drawn from a point on the meander line at the northeast corner of his lot 3 to the center of the lake, and one drawn from a point on the meander line at the northwest corner of his lot 5 to the center of the lake, and, further, that all of the bed of the lake lying outside of these lines and south of the section line between sections 8 and 17, which defendant also claimed to own, was apportioned to the several plaintiffs. It follows, then, that the defendant was at all times the owner of the part of the lake bed apportioned to him, and entitled to the possession thereof as the waters of the lake receded, by virtue of his ownership of his lots, which abutted upon the lake, and, further, that if he ever entered upon the portion of the lake bed not apportioned to him he was a trespasser, for it was without color of right. Such being the case, the possession by the defendant of the part of the lake bed awarded to him cannot affect the question of his alleged adverse possession of the part not apportioned to him; for the case does not fall within the rule that where a party has been in possession, for the statutory period, of a part of an entire tract of land described in a deed, under which he entered, he will be deemed to have been in possession of the entire tract, although his deed is void. Murphy v. Doyle, 37 Minn. 113, 33 N. W. 220; Brown v. Kohout, 61 Minn. 115, 63 N. W. 248. Therefore the burden was upon the defendant to show actual and continuous adverse possession of the part of the bed of the lake which did not belong to his lots, before he could claim any title thereto.

The rule here applicable is as follows: "The possession of one who enters upon the land of another as a mere naked trespasser is limited to so much thereof as he actually occupies, and he cannot claim title by adverse possession to wild and uninclosed land, adjoining that actually occupied and used by him, from the mere fact that he cut natural hay thereon, and let his stock run over and pasture upon it." Sage v. Larson, 69 Minn. 122, 71 N. W. 923. The evidence tends to show that no structures were ever built on the lake bed at any time; but it does show that during all the years from 1886 to the commencement of this action, May 5, 1906, the several owners of the lots abutting

on the lake pastured their cattle and cut the grass in places thereon. There was also evidence tending to show that the defendant cut the grass on the lake bed, pastured his stock thereon each year, as the waters receded, and, further, that in 1890 he broke from fifteen to twenty acres of the lake bed lying directly north of his lots 4 and 5 and extending to within two hundred or three hundred feet of the north line of section 17, and cultivated, by himself or his tenants, the land so broken each year thereafter. But what part of the land broken, if any, was outside of the part of the lake bed owned by the defendant, or in what part of the bed of the lake apportioned to the plaintiffs it laid, or its boundaries, the evidence does not disclose. Our conclusion, based upon a careful consideration of the whole evidence, is that the defendant failed to establish title by adverse possession to either the whole or any part of the lake bed apportioned to the plaintiffs. It is clear that the evidence was not sufficient to justify the trial court in finding in favor of the defendant on his claim of title by adverse possession, and much less was it such as to require such a finding.

The defendant offered to show by his own testimony that he and a former owner of the lots now belonging to plaintiff Kruse agreed between them that the section line between sections 8 and 17, as run by the county surveyor, should be the line between their lands. This was objected to as not the best evidence and that it was incompetent and immaterial. The objection was sustained, and the ruling is here urged as error. It is to be noted that the offer was not to show any particular facts, or a written agreement fixing the boundary line. It was at most an offer to show an oral agreement, without showing that the agreement was ever acted upon or acquiesced in by the parties. The offer was, in any event, too narrow, and the ruling was correct. Follansbee v. Johnson, 28 Minn. 311, 9 N. W. 882.

Judgment affirmed.