## FRANK MAREK v. LOUIS F. JELINEK.[1]

May 29, 1913.

Nos. 17,681—(37).

**Boundary — evidence of practical location.**
    1. To establish a practical location of a boundary line at a place other than the true line, the evidence must be clear, positive and unequivocal.

[1] Reported in 141 N. W. 788.

Where there is no agreement or estoppel, acquiescence must continue 15 years. The evidence of practical location in this case, consisting of fencing by one party on a varying line, cultivation of a part unfenced to the line claimed, and a small amount of ditching within 15 years, does not warrant this court in setting aside a verdict based on a finding that there was no practical location.

**Adverse possession — evidence.**

2. Plaintiff cannot acquire title by adverse possession by reason of a fence constructed by defendant, unless plaintiff is in actual possession to the line of such fence. The question of adverse possession in this case consisted mostly of cultivation of part of the land to the line claimed at a point where there was no fence. The evidence is not clear or unequivocal and it presents only an issue of fact. This issue has been determined by a jury and there is sufficient evidence to sustain the verdict.

**Evidence.**

3. A road order of a town board in laying out a cartway is no evidence of the boundary line between parties beyond its limit.

Action in the district court for Le Sueur county to recover possession of a strip of land described in the complaint and the sum of $100 damages for the withholding thereof. The answer alleged that the correct boundary line between the lands owned by plaintiff and defendant, as established by the government survey, was well-known and marked upon the ground, and denied that defendant attempted to take possession or was occupying any land not within the true boundary of defendant's land as shown by the government survey. The case was tried before Morrison, J., who, at the close of the testimony, denied plaintiff's motion to direct a verdict in his favor, and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*Charles C. Kolars,* for appellant.

*Moonan & Moonan,* for respondent.

HALLAM, J.

This case involves a disputed boundary. The land in controversy is a strip 900 feet long, 6 feet wide at one end and 18 feet wide at the other, about one quarter of an acre in all. These parties together

own the east half of the west half of a section. Plaintiff owns lot 2, or the east one half of the northwest quarter, and defendant owns the east half of the southwest quarter. There appears to be no question that the line claimed by defendant-respondent as the boundary between them is the correct line between these government subdivisions.

The trouble arose as follows:

In 1888 the owners of the east half of the section employed one Myrick, then county surveyor, to locate the line between their holdings. He undertook to do so, and, in so doing, endeavored to locate the center of the section. Myrick is dead and there is no record of his survey. From the oral testimony, it seems clear that he located the section center at a point too far to the south. Plaintiff's tract was then owned by his father, and one Gambold owned defendant's tract. Plaintiff claims that these parties, though they did not participate in this survey, did in fact adopt it to the extent of accepting Myrick's location of the center of the section as correct and as the starting point of the correct line between them. It is claimed: (1) That, by their subsequent conduct, they made a practical location of their boundary in accordance with this survey and on a line which in fact encroached on the land of defendant's grantor; (2) that plaintiff occupied up to this line for a sufficient length of time to gain title by adverse possession. The court submitted both questions to the jury under proper instructions. The jury found for the defendant. Plaintiff moved in the alternative for judgment notwithstanding the verdict or for a new trial. Both motions were denied and plaintiff appeals.

The orders of the trial court should be affirmed.

1. The question whether there was a practical location of the boundary line between the land of these parties was clearly a question of fact for the jury. In Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038, the rules as to what constitutes such a practical location are well stated by the present Chief Justice as follows:

"The practical location of a boundary line can be established in one of three ways only: (1) The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been

expressly agreed upon between the parties claiming the land on both sides thereof, and afterwards acquiesced in; or (3) the party whose rights are to be barred must, with knowledge of the true line, have silently looked on while the other party encroached upon it, and subjected himself to expense in regard to the land, which he would not have done had the line been in dispute."

The effect of a practical location of a boundary line is to divest one proprietor of a conceded title by deed, and "the evidence establishing such location should be clear, positive and unequivocal." Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740.

Coming now to the facts of this case, it appears: At the time of the Myrick survey, the line between these parties for 8 or 10 rods to the west of the center passed through a marsh. It then passed for some distance through land tilled on both sides of the line. Still further to the west, the line passed through timber a considerable distance. There is no claim that the adjoining owners at any time in fact entered into any agreement settling the line. There is accordingly no evidence to bring this case within the second method indicated in the Benz case of establishing a boundary by practical location. Nor is there any evidence to bring this case within the third method indicated. The claim is that there was an acquiescence in a line running west from the center of the section as located by Myrick as the true line, or an adoption of the first method indicated.

The evidence relied upon to establish such acquiescence is: That fences were constructed on this line, that ditches were dug with reference to it, and that the parties cultivated on either side to this line. There is some evidence to sustain plaintiff's contentions but the jury found against him, and the trial court has approved their verdict. Such an order will not be reversed by this court, even for the purpose of granting a new trial, except in cases where there is no evidence reasonably tending to sustain the verdict, or where the verdict is most manifestly and palpably against the weight of evidence. Ohlson v. Manderfeld, 28 Minn. 390, 10 N. W. 418. Bearing in mind that the acquiescence necessary to establish a practical location of the boundary must continue for a sufficient length of time to bar a right of entry under the statute of limitations, that

is, for a period of 15 years, it cannot be held that the verdict is against the evidence.

The evidence to establish a "practical location" is not "clear, positive and unequivocal."

It appears that at some time defendant's grantor Gambold built a wire fence enclosing a portion of his land for a pasture and enclosing his portion of the marsh. One of defendant's witnesses testified that this fence was not there at the time that Gambold rented his farm to a tenant, 15 years before the time of the trial. There was no fence across the tilled field until much later. There was an old rail fence through the woods for many years, but there is evidence that plaintiff himself had stated that this fence was never intended to mark the line, and there is further evidence that three or four years ago a wire fence was built through the woods by Gambold's son on a different line from the rail fence, and plaintiff himself testified that both he and Gambold thought this to be the true line.

It appears that some ditching was done by both of these parties to drain the marsh in the center of the section, but plaintiff's own claim is that the ditch on his property "was constructed some 12 or 14 years ago."

It is claimed that the owners of both sides plowed and cultivated the strip of tillable land up to a ridge along this line. It also appears that, to the west of the line of these parties, a cartway was constructed so as to afford means of travel from plaintiff's land to the west line of the section; that this cartway was constructed with reference to the line of the Myrick survey.

These facts and circumstances doubtless furnish some evidence of acquiescence looking toward a practical location, but, taken all together, they fall far short of such clear evidence of practical location as to warrant this court in setting aside the verdict of the jury.

2. Plaintiff claims adverse possession on the part of himself and his father, who was his predecessor in title. Some of the facts above referred to bear upon this issue as well as upon the question of practical location. The jury found against the plaintiff on this issue. The evidence amply sustains their finding. There is little evidence of adverse possession, except the cultivation of the tillable field.

The only claim of adverse possession of the timbered portion of the land, or of the marsh or meadow, is the existence of a fence constructed by the adjoining proprietor. This is not sufficient. Had plaintiff and his ancestor used and occupied this land to the line of this fence, the fence, though constructed by the other proprietor, might be held to mark the line of their possession, but it cannot be held that plaintiff and his father were in adverse possession of the land to the line of this fence constructed by another, when in fact there was no use or occupation of the land on their behalf at all.

3. It is urged that the court erred in refusing to admit in evidence a road order of the board of supervisors of the town of Lexington laying out the cartway above mentioned. This cartway was laid out over the land of other proprietors and a determination of the board of supervisors with reference thereto was clearly not competent evidence in this case. It was rightly excluded.

Order affirmed.