## JOHN A. ROY v. JOHANN WILHELM DANNEHR and Another.[1]

January 2, 1914.

Nos. 18,357—(136).

**Boundary line—monuments—general verdict.**

Ejectment for a strip of land between adjacent landowners. Plaintiff claimed the strip as part of his 80-acre tract according to government

[1] Reported in 144 N. W. 758.

survey, also by adverse possession and by practical location of the boundary line or acquiescence. *Held:*

(1) Monuments placed by a county surveyor pursuant to section 773, G. S. 1913, show prima facie the section corners and quarter posts of the government survey. Plaintiff failed to adduce testimony sufficient to go to the jury of any other dividing line according to the original government survey between his and defendants' land than the one indicated by said monuments, and it was error to submit the question of government boundary line to the jury.

(2) The evidence is far from conclusive in plaintiff's favor upon either of the other two grounds of recovery, therefore a general verdict, which may have been based on the ground erroneously submitted to the jury, should not be permitted to stand.

Action in ejectment in the district court for Hennepin county and for $630 damages. The case was tried before Hale, J., who, at the close of plaintiff's case, denied defendants' motions for a directed verdict and for a dismissal of the action, and a jury which returned a verdict in favor of plaintiff. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Reversed and new trial granted.

*Latham & Pidgeon* and *A. T. Larson,* for appellants.

*F. H. Castner,* for respondent.

HOLT, J.

Plaintiff owns the north half of the southeast quarter of section 6 in township 118 of range 24 Hennepin county. Defendants own the southwest quarter in the same section. The action is in ejectment. Over 20 years ago the county surveyor of Hennepin county under section 773, G. S. 1913, placed stone monuments at the corners and quarter posts of this section. Defendants claim up to a straight line run between the south and north quarter posts indicated by these monuments. Plaintiff claims the true boundary to be a line 25 feet further west at the south line of his premises and $52\frac{1}{2}$ feet further west at the north line thereof. He bases his right on three grounds: (a) A true survey according to government monuments; (b) adverse possession, and (c) practical location or acquiescence. The court submitted the three to the jury. A general verdict

was returned awarding plaintiff possession of the strip. Defendants appeal from the order denying their alternative motion for judgment or a new trial.

Plaintiff's father bought the 80 acres described in 1883 upon which plaintiff has ever since resided and now owns. A year later defendants became the owners and entered into possession of their farm. Plaintiff has never enclosed the west part of his land or cleared or cultivated the same. He seems to have made use of it as a wood lot, cutting some timber, cutting the natural meadows and also cutting the grass on two small patches of marsh or meadow extending onto the strip in dispute when the seasons were not too wet. One of these two small patches is a rod square and the other 35 feet by 135 feet. Defendants for at least 12 years prior to this action enclosed the easterly part of their land for a pasture and in so doing built a fence upon what plaintiff claims to be the true survey and boundary line as above stated. Plaintiff claims the fence was built 17 years prior to the commencement of the suit.

Two or three recent surveys confirm the claim of defendants to the strip in question, in that it is located west of a straight line drawn between the north and south quarter post monuments. Also that these monuments are the ones placed by the county surveyor under the section referred to. This being conclusively proven, these monuments become prima facie evidence of the true location of the quarter posts according to the original government survey. From an attentive examination of the record we are of the opinion that the evidence tending to overcome this prima facie correct boundary between these parties is entirely insufficient to go to the jury. The only basis for plaintiff's claim that defendants' fence was upon the true division line according to government survey is this:

One Brandes was produced as a witness and testified that in 1882 he was the equitable owner of defendants' land and, having sold some timber stumpage thereon, wished to know the lines. He then employed a surveyor from Wright county, procuring for his use the government field notes from the surveyor of Hennepin county, and a survey was made. This surveyor is dead. One of Brandes' sons who was along is also dead. Another son, then about 17 years of age,

it still living and testified for plaintiff. Brandes claims they located the government quarter post on the south line of the section from witness trees. This location of the quarter post is concededly the same as the stone monument placed by the county surveyor. He however testified nothing as to the location of the north quarter post. He left the surveyor after reaching the center of the section running from the south quarter post. The testimony of the son, as might be expected from one so young and who never appeared to have lived in the neighborhood or have had any interest in the lands, even on his father's account, since 1884, is hazy and indefinite. Neither witness pretends to have seen or located the north quarter post on this survey.

Some other witnesses testified to seeing a stake near the edge of a highway crossing from east to west at the center of the section, but that does not prove the correctness of the survey, if it be assumed that this stake was placed by the surveyor in 1882. It will be noted that, section 6 being the northwest corner section in the township, the surplus or deficiency, as the case may be, in the side lines of the township is added to or taken from the side lines of this section. And we find that the line from the south to the north quarter post is 38 feet more than a mile, while the line from the east to the west quarter post is 200 feet less than a mile. But the testimony does not disclose the distance from the south quarter post, admittedly in the right place, to the southeast corner, nor the distance from the north quarter post to the northeast corner. Presumably the government survey so placed the north and south quarter posts that the line passing through them would parallel the east section line. There is a total lack of evidence establishing any quarter post on the north line different from the stone monument placed under authority of section 773, G. S. 1913, or of any government field notes or measurements which in any manner impeaches the prima facie proof of the correct boundary according to the survey claimed by defendants. It therefore follows that, unless the evidence conclusively establishes title to the strip west of this line in plaintiff by adverse possession or by practical location or acquiescence, there must be a new trial.

The evidence to support title by adverse possession is far from conclusive. Plaintiff does not claim to have occupied adversely until

after defendants built a fence for their pasture. The former and his witnesses testified this fence was built more than 15 years prior to the commencement of the action, while the latter and their witnesses as strenuously insist that it was constructed less than 15 years ago. Moreover, the character of the adverse possession is not very persuasive. Plaintiff never joined any fence to the fence built by defendants, never cultivated up to the fence, and the cutting of the small patches of marsh or meadow did not occur every year. Plaintiff used his adjoining land as a wood lot, but there is no evidence that he cut any trees on the strip in dispute, except that he testifies he showed his attorney some large maple stumps from trees cut some 5 or 6 years before the trial. Surely title in plaintiff by adverse possession does not appear conclusively.

Neither can plaintiff claim that the evidence is conclusive that the true boundary is the line of the fence because of practical location or acquiescence. The record is absolutely barren of any agreement between the parties that the fence should be the division line. Brandes testified to having pointed out to the defendants, when they purchased, the line according to the survey two years before and the trees blazed on such line. Defendants deny this and state Brandes did not show the lines of any survey, on the contrary he professed ignorance of the true line, but stated his belief that it ran near where defendants subsequently built their fence. It is perfectly apparent that no surveyor would have run such a crooked division line as that taken by this fence. In the building thereof defendants did not hesitate to deviate several feet from the general course, whenever they could save a fence post by nailing to a tree. A pasture fence of a couple of rails or wires thus built by one wholly on his own land through the timber, indicating by its careless irregular course that the builder did not intend it as a true boundary line, ought not to be relied on by an adjacent owner who has had absolutely nothing to do with its location, construction, or use, as a division line by implied agreement or acquiescence, if such a term be at all appropriate to defendants' conduct. Our decisions are to the effect that one is not to be deprived of his land because he, through mistake or ignorance, placed a fence on what he thought was the division line, when it

was not such in fact, unless the evidence of practical location, or acquiescence for at least 15 years is clear, positive, and unequivocal. Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038; Markusen v. Mortensen, 105 Minn. 10, 116 N. W. 1021; Marek v. Jelinek, 121 Minn. 468, 141 N. W. 788.

As above stated, we have reached the conclusion that it was error to submit the location of the government division line between these two litigants to the jury. Upon this record there is no room for placing the same elsewhere than on the line shown by the defendants' proof. This error is properly raised by the seventh assignment of appellants. Necessarily it must result in a reversal, for, as shown, on neither of the other two grounds is the evidence conclusive in plaintiff's favor. It is not necessary to discuss other assignments of error relating to rulings upon proferred testimony, or the instructions of the court, for, on another trial, there is not likely to be any complaint in that respect.

We are urged to order judgment notwithstanding the verdict, but we are not disposed to so do upon this record. We are inclined to believe that upon a more careful trial the situation will be clarified so that the jury may be able to render a consistent verdict. The jury evidently labored under some confusion, for although possession of the controverted strip was awarded to plaintiff, he failed to recover the $50 damages which defendants had caused by the cutting and carrying away of 112 young trees therefrom according to the uncontroverted evidence.

The order in so far as it denies a new trial is reversed and a new trial awarded.