EMIL E. ENGQUIST AND OTHERS v. ALBERT WIRTJES
AND OTHERS.[1]

January 28, 1955.

No. 36,440.

*Johanson, Winter & Lundquist* and *F. C. Anderson,* for appellants.
*I. L. Swanson,* for respondents.

[1]Reported in 68 N. W. (2d) 412.

DELL, CHIEF JUSTICE.

This is a boundary-line action. Defendants appeal from a judgment entered in favor of the plaintiffs.

Plaintiffs are the owners of the north half and defendants of the south half of section 21, township 127, range 43, in Grant county, Minnesota. The boundary line between these half sections is in dispute. For convenience the land on which the line is in dispute will be referred to by the names of the owners of the land to the south, which from east to west are the Wirtjes 80, the Kietzman east 80, the Kietzman fractional west 80, and the Werk fractional 40. Plaintiffs claim that the true boundary between these half sections is the line running between and dependent upon the east and west quarter section corners of said section as established by the original government survey. Defendants contend that fences, sod and weed strips, and a dead furrow, which have been in existence in excess of 15 years, determine the boundary line by virtue of adverse possession. They further claim that the line has been established by "practical location." In 1950 defendants built a fence along the entire boundary in dispute on what they claim was the location of pre-existing fences, sod and weed strips, and dead furrow. The difference between this fence line and the line claimed by the plaintiffs varies from approximately 10 feet on the west to 95 feet near the east end, and the area involved in the dispute totals 3.7 acres.

We shall not set out in detail the history of the fences, sod and weed strips, and dead furrow on the various portions of the line in dispute. The function of an appellate court is that of review. It does not exist for the purpose of demonstrating to the litigants through a detailed statement of the evidence that its decision is right. If the length of judicial opinions is to be kept within reasonable bounds, appellate courts must more closely adhere to the purpose for which they exist.

A fence existed north of the Wirtjes 80 for approximately 40 years. Defendants claim that, although the sod strip south of this fence was not cultivated, it was used by the owner to the south as headland upon which machinery was turned and also as hay land. Plain-

tiff contends that the strip was not used by anyone; that the fence was built for pasture purposes around a slough; and that it was not intended to establish the boundary line. Similarly, with reference to the fence north of the Kietzman east 80, plaintiffs contend that it was neither built nor rebuilt as a boundary line fence. On the Kietzman fractional west 80 and the Werk fractional 40 a sod and weed strip and dead furrow, which once apparently divided the land, were plowed up and their location is in substantial dispute.

The trial court held that the true boundary line between the north and south halves of said section was a line between and dependent upon the east and west quarter section corners of said section as established by the original government survey and that the evidence did not support defendants' claim to title by adverse possession or by a "practical location" of the boundary line.

■ Defendants first assert, as an affirmative defense, that they acquired title to the land in dispute by adverse possession. Before title by adverse possession can be obtained, the disseizor must show, by clear and convincing evidence,[2] an actual, open, hostile, continuous, and exclusive possession,[3] for the requisite period of time which, under our statute, is 15 years.[4] Subjective intent to take land adversely is not essential in this state, and title by adverse possession may be obtained even though the disseizor does not intend to take land not belonging to him, so long as he does intend to exclude all others.[5]

---

[2]See, Simpson v. Sheridan, 231 Minn. 118, 120, 42 N. W. (2d) 402, 403; 1 Dunnell, Dig. (3 ed.) § 127.

[3]Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553; Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. (2d) 588; 1 Dunnell, Dig. (3 ed.) § 113, note 44.

[4]M. S. A. 541.02.

[5]Fredericksen v. Henke, 167 Minn. 356, 209 N. W. 257, 46 A. L. R. 785; see, 11 Minn. L. Rev. 457. One of the leading cases to the contrary is Miller v. Mills County, 111 Iowa 654, 82 N. W. 1038. This contrary view has been responsible for extensive reliance on the doctrine of practical location of boundary lines in Iowa. See, e.g., Helmick v. Davenport, R. I. & N. W. Ry. Co. 174 Iowa 558, 156 N. W. 736.

Defendants argue that the existence of a fence to the north of the Wirtjes 80 for the requisite period of time satisfies all the elements of adverse possession except that of actual possession. Without passing on this questionable conclusion, it is obvious that the erection of a fence by an adjoining landowner has little significance on the issue of adverse possession unless the disseizor uses and occupies the land up to the line established by the fence.[6] Defendants submit that actual possession was conclusively established by testimony to the effect that they used the land south of the fence for the purpose for which it was best suited in connection with the Wirtjes' farm. While there is some evidence supporting this contention, there is also testimony to the effect that the disputed area was not used by anyone. We are not prepared to say, as defendants suggest, that this testimony must be interpreted to mean merely that the land was not cultivated and does not negate the fact that it was used for agricultural purposes. If such an interpretation was warranted, it was for the trial court to make it and this was not done.

There is a similar conflict in evidence concerning a fence to the north of the Kietzman east 80. Here again plaintiffs claim that this fence was not intended to be erected on the boundary line. There is testimony to the effect that there was no existing fence on the property when plaintiffs purchased it in 1941 and that plaintiffs cultivated the land to the south of the fence they subsequently built. Other evidence tended to show that the plaintiffs only reconstructed a prior fence and that defendant Kietzman exclusively used the disputed land south of this fence since 1912.

The west half mile of the boundary line in dispute was never fenced until the present controversy arose in 1950. On the Kietzman fractional west 80 the boundary line apparently was evidenced by a weed strip and dead furrow when plaintiffs acquired their land, and the parties agree that at that time the Werk fractional 40 was separated from the plaintiffs' land by a sod strip. The fields on the west half of the section have since that time been plowed in such a fashion as to obliterate and destroy the dead furrow and sod and weed strip

[6]See, Marek v. Jelinek, 121 Minn. 468, 141 N. W. 788.

and the primary dispute here is where they were located. Under plaintiffs' evidence, which apparently the court accepted as true, the sod strip on the Werk fractional 40 and the dead furrow and weed strip on the Kietzman fractional west 80 ran due east and west with their approximate center opposite an iron stake located at or within a foot and six inches of the west quarter section corner of said section and upon the boundary line which the court established in its findings.

We are impressed with the numerous and distinct conflicts in the evidence, which at times are most confusing. We have repeatedly said, in boundary-line as well as in other types of cases, that the findings of the trial court will be disturbed "only where the evidence taken as a whole furnishes no substantial support for them or where it is manifestly or palpably contrary to the findings."[7] Viewing the evidence in the light most favorable to the prevailing party, we find ample support for the conclusion reached by the trial court that defendants did not acquire title by adverse possession.

■ Defendants next contend that the boundary in dispute was established by recognition and acquiescence on the part of the parties and their privies. In this state and elsewhere the doctrine of "practical location" of boundaries has become well established.[8] In Benz v. City of St. Paul, 89 Minn. 31, 38, 93 N. W. 1038, 1039, we set forth three exclusive methods by which "practical location" can be established:

"* * * (1) The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been expressly agreed upon between the parties claiming the land on both sides thereof, and afterwards acquiesced in; or (3) the party whose rights are to be barred must, with knowledge of the true line, have silently looked on while the other party encroached upon it, and subjected

[7]Bjerketvedt v. Jacobson, 232 Minn. 152, 157, 44 N. W. (2d) 775, 778; 1 Dunnell, Dig. (3 ed.) § 411.

[8]See, 7 Minn. L. Rev. 569; 37 Minn. L. Rev. 382; 2 Dunnell, Dig. (3 ed.) § 1083.

himself to expense in regard to the land, which he would not have done had the line been in dispute."[9]

The second and third stated methods have as their respective bases an express agreement and estoppel. There is little, if any, evidence of an agreement in the instant case, and the essential elements of estoppel are clearly lacking. Defendants' contention must be supported, if at all, on the first method, namely, acquiescence for the statutory period of time. While this court, in Simms v. Fagan, 216 Minn. 283, 12 N. W. (2d) 783, said that, because the establishment of a practical location by acquiescence rests upon the principle of estoppel, knowledge of the exact boundary line was necessary,[10] in Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553, we held that such knowledge was not a prerequisite.[11] It is now clear that the principles of estoppel, except perhaps in a very general sense, have no application to the location of a practical boundary by means of the first method set out in the Benz case, and we need not here concern ourselves with them.

Although independent of adverse possession, except for the time limitations involved, the effect of finding a practical location is in many respects similar to acquiring title by adverse possession. Consequently, the evidence of acquiescence must also be "clear, positive, and unequivocal."[12] While there is some evidence tending to show acquiescence of a practical location in this case, it is far from being so conclusive as to justify setting aside the findings of the trial court. It must be kept in mind that the acquiescence required is not

[9]These three methods were originally determined in Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740.

[10]In Simms v. Fagan, 216 Minn. 283, 290, 12 N. W. (2d) 783, 787, this court, in dealing with the first method of establishing practical location, erroneously relied on language in Benz v. City of St. Paul, 89 Minn. 31, 39, 93 N. W. 1038, 1040, which concerned the third method.

[11]See, 37 Minn. L. Rev. 382.

[12]Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553; Roy v. Dannehr, 124 Minn. 233, 144 N. W. 758; Marek v. Jelinek, 121 Minn. 468, 141 N. W. 788; Markusen v. Mortensen, 105 Minn. 10, 116 N. W. 1021; Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740.

merely passive consent to the existence of a fence or sod strip, but rather is conduct or lack thereof from which assent to the fence or sod strip as a boundary line may be reasonably inferred. Thus in the Fishman case, in affirming the holding of the trial court that there had been acquiescence, we pointed out that the record showed that the parties *attempted* and *intended* to place the fence as near the dividing line of their farms as possible.[13] On the other hand, in Roy v. Dannehr, 124 Minn. 233, 237, 144 N. W. 758, 760, we said that a pasture fence built by one on his own land, the careless, irregular course of which indicated that the builder did not intend it as a true boundary line, ought not to be relied on by an adjacent landowner, who had nothing to do with its construction, location, or use, as a division line by acquiescence. Here there is evidence to the effect that neither the plaintiffs nor their predecessors in title recognized or treated the fence existing on the east half of the section as a division line. Moreover, whether the defendants or their privies used the land immediately south of the fence is also in dispute. As regards the west half of the section, the basic question is the location of the sod and weed strips and dead furrow which were admittedly treated as the boundary line.

The issue here as with that of adverse possession was one primarily of fact to be resolved by the trial court. Upon conflicting evidence the court decided adversely to the defendants. Under the circumstances it cannot reasonably be said that, as a matter of law, there was acquiescence by the parties to a practical location for the statutory period.

■ Defendants assign as error the admission of testimony relating to certain iron posts situated at or near the corners of the section in question. In determining the true boundary as established by the original government survey, the court relied primarily on these iron posts. The materiality and relevancy of these stakes to the determination of the controversy is obvious. Defendants contend, how-

---

[13]See, also, Bjerketvedt v. Jacobson, 232 Minn. 152, 44 N. W. (2d) 775, where we affirmed the finding of the trial court that the fence in question was taken and accepted by all the parties and their predecessors as the boundary line.

ever, that no proper foundation was laid for the testimony and that it was speculative and incompetent. The evidence shows that iron posts of this type are customarily used by surveyors to replace the wood markers used in the original government survey. There was ample testimony, including similarity in measurements contained in original field notes, indicating that the posts were, in fact, replacements of the original government markers. Moreover, the use and location of two of the posts in the center of long-established highways as well as their common acceptance generally support this conclusion. While a more extensive investigation as to their accuracy could perhaps have been made, this goes only to the weight to be given to the testimony and not to its admissibility. In any event, the admission of such evidence rests largely in the discretion of the trial court,[14] and we find no abuse of that discretion here.

Affirmed.

[14] 7 Dunnell, Dig. (3 ed.) § 3251.