**Eugene L. ALLRED, et al., Appellants,**

v.

**James E. REED, et al., Respondents.**

**No. C0–84–1786.**

Court of Appeals of Minnesota.

Feb. 12, 1985.

Review Denied April 18, 1985.

Jill T. Doescher, Minneapolis, for appellants.

Gregory D. Larson, Park Rapids, for respondents.

Considered and decided by WOZNIAK, P.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellants Allred appeal from a judgment awarding to respondents Reed title to a disputed strip of land by adverse possession and pursuant to the doctrine of practical location of boundaries. We affirm the trial court on the basis of practical location of boundaries.

## FACTS

On August 7, 1965, Harriet, George, and Warren Sorenson divided their lakeshore property, selling a portion to Patricia and Phillip Morgan on a contract for deed. The property was not surveyed. The contract for deed was paid off in 1974. Patricia Morgan subsequently married Eugene Allred, and the warranty deed was delivered to Patricia Allred. The Allreds are appellants here.

Shortly after entering into the contract for deed, the Sorensons built a fence along what they approximated was the boundary between the lots. It does not stretch the entire length of the lots. The Sorensons believed they had retained 300 feet of shoreline. However, the descriptions in the contract and deed show they retained only 280 feet. Thus, the fence is located approximately 20 feet within the Allreds' property.

The Sorensons did not discuss the fence with the Morgans before building it. Patricia Morgan-Allred testified that, regarding the fence, Warren Sorenson mentioned to her that "it was not on the line." She thought that meant the fence was not intended to be the boundary. Her amended complaint states that she "incorrectly assumed the line was placed according to the description." George Sorenson testified that he knew the fence might not be exactly on the 300 foot line, but it was close and was intended to be a rough boundary. He said that if he had known they only reserved 280 feet, he would have built the fence further in. Both Harriet and Warren Sorenson thought the fence was built before the Morgans purchased the lot. George Sorenson and Patricia Morgan-Allred testified that it was built after the land was sold. The court found it was built shortly after the contract for deed was signed.

The Morgans did not object to the fence. It helped keep their children and dogs on the Morgan side of the fence and away from the Sorensons' lot. Patricia Morgan-Allred testified there was an agreement to keep the border area wild for privacy, since the boundary was unclear. The Sorensons deny any agreement.

The Sorensons sold their property to the Hills in 1970; the Hills sold to the Prosheks in 1977; the Prosheks sold to the Kellys in 1979; and the Kellys sold to respondent Reeds in 1980. The Prosheks, Kellys, and Reeds testified that they thought the fence was the boundary. The Hills did not testify, but Morgan-Allred stated the Hills began to mow the disputed area in 1975 or 1977. Beginning with the Prosheks, each owner cleared the area to the fence. The Prosheks built a dog house against the fence, and lived on their lot year-round. These neighbors testified they rarely, if ever, saw the Morgans or Allreds visit their cottage.

The Reeds had the property surveyed in 1983 in order to subdivide it. When they discovered their boundary was 20 feet short of the fence, the Reeds contacted the Allreds and asked them to sign a boundary agreement. The Allreds refused, and of-

fered to sell the strip for $100 per foot, or $2,000. The Reeds declined to pay.

The matter was tried to the court. The judge found that the Sorensons represented to the Morgans that the fence was located on the boundary line, that the Reeds and their predecessors have had open, hostile, actual, continuous and exclusive possession since 1966, and that the Allreds acquiesced in the fence as the boundary, never asserting ownership to the questioned land. The memorandum attached to the trial court's original order indicates that it found the evidence to be clear and convincing.

## ISSUE

Is the trial court's finding that the fence established the practical location of the boundary by acquiescence supported by the evidence?

## ANALYSIS

Minn.Stat. § 559.23 (1984) authorizes judicial action to determine boundary lines.

An action may be brought by any person owning land or any interest therein against the owner, or persons interested in adjoining land, to have the boundary lines established; and when the boundary lines of two or more tracts depend upon any common point, line, or landmark, an action may be brought by the owner or any person interested in any of such tracts, against the owners or persons interested in the other tracts, to have all the boundary lines established.

*Id.* The underlying doctrine is termed boundary by "practical location." *Theros v. Phillips*, 256 N.W.2d 852, 858 (Minn. 1977).

■ There are three methods by which a practical location of a boundary may be determined.

(1) Acquiescence: The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations.
(2) Agreement: The line must have been expressly agreed upon by the interested parties and afterwards acquiesced in.

■ Estoppel: The party whose rights are to be barred must have silently looked on with knowledge of the true line while the other party encroached thereon or subjected himself to expense which he would not have incurred had the line been in dispute.

*Id.; see Engquist v. Wirtjes,* 243 Minn. 502, 506, 68 N.W.2d 412, 416 (1955). The evidence must be clear, positive, and unequivocal. *Theros* at 858. The trial court's determination of a boundary is a fact issue, and is awarded the same deference as any other factual determination. *Wojahn v. Johnson,* 297 N.W.2d 298, 303 (Minn.1980).

■ The trial court found that the Allreds acquiesced in the fence as the boundary location for the requisite fifteen years. Minn.Stat. § 541.02 (1984).

The acquiescence required is not merely passive consent to the existence of a fence or sod strip, but rather is conduct or lack thereof from which assent to the fence * * * as a boundary line may be reasonably inferred.

*Engquist,* 243 Minn. at 507–508, 68 N.W.2d at 417. One of the most important factors is whether the parties attempted and intended to place the fence as near as possible to the boundary line. *Wojahn* at 305.

■ George Sorenson's testimony strongly indicates that he attempted and intended to build the fence as close to the boundary line as possible. If he had known the boundary line fell elsewhere, he would have placed the fence on that line. The complaint states that "Patricia Allred incorrectly assumed the line was placed according to the description" of the legal boundary line. While Allred says she did not think the fence was intended to be the exact border, she did understand it was meant to be near the boundary. She testified that she treated the fence as a border, keeping her children and dogs on their side of the fence, although during the Sorensons' tenure she did venture across the fence to pick berries. There was no attempt by the Morgans to clarify the boundary location or expressly state that the fence was not the boundary.

The Allreds suggest that the period of acquiescence may not run during the period of the contract for deed, while legal title remained with the Sorensons. Whatever validity this theory may have under a claim of adverse possession, and we do not decide that it has any, the existence of a contract for deed does not seem relevant here. Under the practical location theory, the parties are essentially agreeing on the division of the property and whatever rights attach thereto, without the necessity of claiming adversely to the other's title.

We find the evidence sufficient to support the trial court's finding that the Allreds acquiesced in the fence as the location of the boundary for the requisite period. Based upon this decision, we do not address respondents' claim of adverse possession under Minn.Stat. § 541.02.

**DECISION**

Affirmed.