**Ronald E. NASH, et al., Respondents,**

v.

**John MAHAN, et al., Appellants.**

**No. C3–85–691.**

Court of Appeals of Minnesota.

Nov. 19, 1985.

James O. Ramstad, Detroit Lakes, for respondents.

Roderic E. Schuster, Fargo, N.D., David A. Stowman, Detroit Lakes, for appellants.

Considered and decided by POPOVICH, C.J., LESLIE and NIERENGARTEN, JJ., without oral argument.

### OPINION

NIERENGARTEN, Judge.

In a quiet title action, the trial court found that respondents Nash adversely possessed a portion of land to which appellants Mahan had record title. Mahans brought this appeal, contending that while Nashs had adversely possessed part of the land, the trial court erred in finding that they adversely possessed the entire portion claimed. We reverse in part, affirm in part and remand.

### FACTS

In 1980, respondents Ronald and Charlotte Nash purchased Lot 13 of John Johnson's Subdivision ("Lot 13") from Palmer and Dorothy Solheim who had owned the property since 1955. Appellants John and

Laurel Mahan purchased the adjoining Lot 14 from Roger and Lola Wermager in 1978. Lots 13 and 14 border a lake on the southerly boundary line. The east border of Lot 13 and the west border of Lot 14 run through Nashs' cabin, which is located on the southeast corner of Lot 13 and the southwest corner of Lot 14. A patio abuts the cabin on the east and a stairway extends north of the patio. A roadway runs in an easterly-westerly direction approximately midway through the lots. The northerly half includes a steep wooded hill.

Nashs examined Lot 13 a number of times prior to purchasing it. The realtor told Ronald Nash that it was a 95 foot lot and showed him a stake protruding approximately eight inches above the ground on the lakeshore, about three feet southeasterly from the cabin's patio, and one on the hill across the road. The realtor did not know the origin of the stakes or the length of their existence.

Subsequently, several people informed Ronald Nash that all the lots were 75 foot lots which was confirmed by a title check. Nash then directed a surveyor to survey and prepare a legal description utilizing as the east boundary of the land the line between the two stakes. He brought a quiet title action based on that survey. Nash mows a two or three foot area abutting the patio to the east, and mows, grows some flowers, and picks weeds in the area easterly of the stairs. He mows the area across the road up to the hill. The hill is in a wild and natural state. He observed this same type of maintenance by the preceding land owner.

The realtor testified to the existence of the two stakes and that Palmer Solheim told him that the line between the stakes was the property line. Solheim also said that he had 95 feet of lakeshore and that they mowed the land north of the road from time to time.

Dorothy Solheim testified that she and her husband had built the patio approximately 25 years previously and had maintained a strip of land to the east of the patio, and had mowed the grass up to the

steep part of the hill. They parked their automobile to the east of the stairs which led from the patio to near the roadway. She assumed ownership of everything to the west of a line drawn between the two stakes.

Roger Wermager, the former owner of Lot 14, did not see the stake which Nash testified had been present near the lakeshore; there had been an old cabin near the spot, which he tore down. He also testified that the area north of the roadway was in a wild and undeveloped state. He claimed that the stake on the hill established the west property line for Lot 14 and the siting between the stake, a power line and a utility pole formed the boundary line between the two properties. He believed the edge of the Nashs' patio was right on the edge of the property line.

Appellant John Mahan testified that at the time of his purchase of Lot 14, he tore out an old foundation on the land, the west edge of which was six feet easterly of the patio on the east edge of Nash's property. He saw no stakes at the foundation site, at that time; he later saw them, shortly after he and Nash had discussed the location of their property lines, and Nash informed him that he was going to have a survey made. Mahan said that the property line which he and Solheim had discussed ran from a point close to the patio through the two poles. He admitted that the land might have been mowed three to four feet beyond the poles but that there was no maintenance to the east of the steps.

## ISSUE

Was the evidence insufficient as a matter of law to support the trial court's findings of adverse possession?

## ANALYSIS

The trial court found that Nashs adversely possessed a strip of land approximately 30–35 feet wide to the east of the boundary line between Lot 13 and Lot 14. Upon appeal, Mahans have the burden to show that there is no evidence reasonably tend-

ing to sustain the trial court's findings. *Gifford v. Vore*, 245 Minn. 432, 434, 72 N.W.2d 625, 627 (1955).

To establish title by adverse possession, "the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time." *Ehle v. Prosser*, 293 Minn. 183, 189, 197 N.W.2d 458, 462 (1972). That length of time is 15 years. Minn.Stat. § 541.02 (1984).

The trial court must make precise findings upon a determination of adverse possession. *Konantz v. Stein*, 283 Minn. 33, 47, 167 N.W.2d 1, 5 (1969). Unless there are adequate findings, this court cannot conduct a proper review.

Mahans agree that Nashs did adversely possess some of the property to the east of the boundary line between Lot 13 and Lot 14, but not to the extent found by the trial court. They contend the land adversely possessed by Nashs was a parcel to the west of the following line:

a line commencing at the lakeshore parallel to the patio as shown on Plaintiffs' Exhibit "1"; thence north to the southerly edge of the patio and along the easterly edge of the patio to the northerly corner of the patio; thence diagonally in a northwesterly direction to a point 6' east of the base of the stairway as shown on Plaintiff's Exhibit "1"; thence running northerly parallel and 6' equidistant from the stairs to the northerly end of the stairs and continuing in the same angle to the rear of the lot.

The trial court disagreed, basing its decision on the line drawn between the two stakes in the ground.

The mere fact that the stakes were in the ground is not sufficient to establish adverse possession, unless Nashs had used and occupied land up to the line established by the stakes. *See Engquist v. Wirtjes*, 243 Minn. 502, 505, 68 N.W.2d 412, 415 (1955). The evidence does not support such a finding.

As to the steep hill which is on the northerly portion of the land, Mahans concede that Nashs adversely possessed a portion of the land, as described above, but not that remaining portion to the east which was left in a wild and natural state. One who leaves land in a wild and natural state cannot acquire title by adverse possession. *Gifford*, 245 Minn. at 437, 72 N.W.2d at 629.

In addition, there was insufficient evidence in support of adverse possession to establish title to the land located to the north of the roadway and south of the hill, except as to the portion conceded by Mahans. The only testimony was that this land was mowed a few times a year and cleared. This is not sufficient to constitute "actual, open, hostile, continuous, and exclusive possession" of that portion of the land. *See Sage v. Larson*, 69 Minn. 122, 123–124, 71 N.W. 923, 924 (1897).

As to the portion of the land consisting of the roadway and south to the lake, viewing the evidence in the light most favorable to the prevailing party, the trial court's conclusion that Nashs acquired this portion of the land by adverse possession is not clearly erroneous. As in other similar actions, the testimony here was somewhat confusing. *Engquist*, 243 Minn. at 506, 68 N.W.2d 416.

## DECISION

The evidence was insufficient as a matter of law to support the trial court's decision that respondents are entitled to adverse possession of the entire tract of land which they claim. The matter is reversed in part and remanded for new findings in accordance with this opinion.

Reversed in part, affirmed in part and remanded.