**Glenn R. BRITNEY, et al., Respondents,**

v.

**SWAN LAKE CABIN CORPORATION, Appellant.**

**No. A10–1002.**

Court of Appeals of Minnesota.

March 15, 2011.

868

Kent E. Nyberg, Kent E. Nyberg Law Office, Ltd., Grand Rapids, MN, for respondents.

Richard K. Sellman, Sellman Law Office, Hibbing, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; TOUSSAINT, Judge; and HUDSON, Judge.

## OPINION

TOUSSAINT, Judge.

This appeal is from an order dismissing appellant Swan Lake Cabin Corporation's counterclaim seeking a judicial determination of a boundary by practical location between two parcels of Torrens property. Because the district court did not err by concluding that appellant's failure to follow the procedural requirements of Minn.Stat.

§ 508.671 defeated its counterclaim, we affirm.

## FACTS

Appellant is the owner in fee simple of Lot Four, Block Two of the Plat of Swan Lake (Lot Four), registered property in Itasca County. Appellant received title to the property from the five children of Oscar Johnston, who originally acquired the property in 1909. The property is used seasonally by members of appellant, and a larger group attend an annual meeting each summer. Located on Lot Four are a cabin, a playhouse structure, a shed, and a sauna, all of which have been on Lot Four since the 1950s. A wire fence used to run between the shed and sauna in the vicinity of the eastern boundary line of Lot Four, but the fence has not been maintained since the 1950s and was not recognized as the boundary line of the property.

Respondents Glenn R. and Charlotte Britney are the owners in fee simple of Lot Five, Block Two of the Plat of Swan Lake (Lot Five), registered property in Itasca County. Respondents received title to the property in 1990 from Charlotte Britney's parents, who owned the property since at least 1950. In the 1950s, Charlotte Britney and her parents planted dozens of trees near the southeastern boundary of Lot Five, but these trees were not intended to mark the boundary between Lots Four and Five. Respondents built a log home, constructed a driveway, and built a lake access to the west of the home in 1990; they moved to Lot Five full time in 2001.

In 1976, appellant's predecessor in interest hired a registered land surveyor to survey Lot Four and determine the eastern and western boundaries of the property (Hartman survey). The Hartman survey placed three iron pins on the eastern boundary—the boundary between Lots Four and Five. The boundary indicated by the Hartman survey differs from the location of the fence. Sometime after the survey, one of appellant's shareholders planted trees along what they believed to be the border between the two lots. According to the Hartman survey, respondents' driveway encroaches on appellant's property and the buildings on Lot Four do not encroach on respondents' property.

In 2004, appellant's attorney wrote respondents a letter notifying them that, if they stopped cutting down trees—which appellant believed were located on Lot Four—appellant would "excuse [respondents'] incursion on to our property."

In 2007, respondents hired Northern Lights Survey and Mapping to survey Lot Five (Northern Lights survey). The Northern Lights survey was able to locate only two of the three pins placed by the Hartman survey. The border between the lots according to the Northern Lights survey varies in location from the Hartman survey by 2.9 to 6.25 feet. According to the Northern Lights survey, respondents' driveway does not encroach on Lot Four but appellant's sauna and shed do encroach on Lot Five. Both parties agree that the Northern Lights survey correctly describes the boundary as platted.

Respondents sued appellant in 2008, seeking judgment that they are the owners in fee of the entirety of Lot Five and entitled to recovery of possession of the whole thereof and seeking damages for appellant's "unlawful withholding of possession" of the property. In its answer, appellant argued that the buildings had been in their present location "for a period far beyond the 15 year period required for adverse possession to determine the boundary between Lot 4 and Lot 5 by practical location." Appellant also counterclaimed for a judicial determination of boundary by practical location "based on

[appellant's] adverse possession far in excess of the statutory period" and seeking monetary damages for respondents' cutting of trees allegedly on appellant's property.

Following a court trial, the district court dismissed appellant's counterclaim for failure to comply with the procedural requirements of Minn.Stat. § 508.671. The district court further explained that appellant's counterclaim failed on the merits because it had not proven acquiescence by respondents or their predecessors in interest by "clear, positive, and unequivocal" evidence. The district court then found that the Northern Lights survey accurately described Lots Four and Five and that appellant and respondents were the owners in fee simple of their respective lots. Neither party had submitted sufficient evidence for monetary damages, and the district court accordingly dismissed those claims. Appellant now challenges the district court's dismissal of its counterclaim.[1]

## ISSUES

I. Does Minn.Stat. § 508.671 apply to appellant's counterclaim or respondents' initial action?

II. Did the district court err by concluding that appellant had not established a boundary by acquiescence by clear and convincing evidence?

## ANALYSIS

### I.

■ Matters related to Torrens properties are governed by the Torrens Act, Minn.Stat. §§ 508.01–.82 (2010).[2] *In re Geis*, 576 N.W.2d 747, 749–50 (Minn.App.

1998), *review denied* (Minn. May 28, 1998). "When the Torrens Act specifies the procedure necessary to take some action regarding registered land, parties and district courts must follow this procedure." *Phillips v. Dolphin*, 776 N.W.2d 755, 758 (Minn.App.2009), *review denied* (Minn. Mar. 16, 2010); *see also In re Brainerd Nat'l Bank*, 383 N.W.2d 284, 286–87 (Minn.1986) (holding that the district court had no authority to vacate a decree of title of registered land for excusable neglect under Minn. R. Civ. P. 60.02, because rule 60.02 is inconsistent with certain provisions of the Torrens Act); *Park Elm Homeowner's Ass'n v. Mooney*, 398 N.W.2d 643, 646–47 (Minn.App.1987) (holding that the district court lacked authority to issue an order that adversely affected title to registered land because the district court did not comply with the Torrens Act).

The procedure for seeking a judicial determination of a boundary line of one or more Torrens properties is set forth in Minn.Stat. § 508.671: "Section 508.671 *shall* apply in a proceedings subsequent to establish a boundary by practical location for registered land." Minn.Stat. § 508.02 (emphasis added); *see also* Minn.Stat. § 645.44, subd. 16 (2010) (" 'Shall' is mandatory."). A proceeding under section 508.671 must follow several steps, including filing a certified copy of the petition with the registrar of titles and providing notice to all interested parties. *Phillips*, 776 N.W.2d at 758–59.

■ The district court found that appellant failed to follow these procedures, and appellant presents no argument on appeal

---

1. The district court's dismissal of the monetary-damage claims is not before this court on appeal.

2. A Torrens system is a system for establishing title to real estate in which a court-issued title certificate is conclusive evidence of ownership. *Black's Law Dictionary* 1624 (9th ed.2009).

that this finding is erroneous.[3] "These steps are not inconsequential." *Id.* at 759. "The title examiner participates in proceedings, and all interested parties, including mortgagees, are notified of proceedings and allowed to participate. This process ensures compliance with due process and statutory requirements." *Id.* Because the procedural requirements of Minn.Stat. § 508.671 were not followed, the district court properly dismissed appellant's counterclaim. *See Park Elm Homeowner's Ass'n,* 398 N.W.2d at 646–47 (holding that a district court lacks authority to issue an order that adversely affects title to registered land if it does not comply with chapter 508).

Appellant argues that the district court "erroneously imposed" the duty of compliance with Minn.Stat. § 508.671 on appellant when respondents were the moving party. But this assertion misconstrues the procedural history of the case. Appellant was the moving party on its counterclaim. The burden of compliance with Minn.Stat. § 508.671 on the counterclaim therefore rested on appellant, and the failure to comply with the statute's procedural requirements relieved the district court of its authority to issue an order on the counterclaim.

◼ Appellant also argues on appeal that the district court was without authority to consider respondents' claim, as respondents' action similarly did not follow the procedural requirements of Minn.Stat. § 508.671. We disagree. The statute governs the procedural steps that must be followed by a party seeking to have "all or some of the common boundary lines judicially determined." Minn.Stat. § 508.671, subd. 1. Respondents' claim, however, was not one seeking a judicial determination of a boundary line. Instead, respondents' complaint sought a judgment that they were the "owner[s] in fee of the entirety of Lot Five (5), Block Two (2), Plat of Swan Lake" and were entitled to recovery of possession "of the whole thereof." Because respondents' complaint sought a judicial determination of ownership—rather than a judicial determination of the boundary—and the Northern Lights survey accurately described the boundary as platted, the procedural requirements of Minn. Stat. § 508.671 do not apply to respondents' claim.

## II.

◼ Even if appellant's counterclaim were not procedurally barred by its noncompliance with Minn.Stat. § 508.671, we would conclude that the district court did not err by concluding that appellant failed to establish a boundary line by practical location in the present case. A district court's findings of fact in a boundary-line dispute "will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence." *Gifford v. Vore,* 245 Minn. 432, 434, 72 N.W.2d 625, 627 (1955). "Upon appeal the burden is on the appellant to show that there is no substantial evidence reasonably tending to sustain the [district] courts findings." *Id.*

◼ "[T]he common law doctrine of practical location of boundaries applies to registered land whenever registered." Minn.Stat. § 508.02. Under this doctrine, the practical location of a boundary line may be established in only three ways:

(1) Acquiescence: The location relied upon must have been acquiesced in for a

---

**3.** Respondents' certificate of title indicates that respondents' property was subject to a $100,000 mortgage in favor of U.S. Bank. The district court concluded that as respondents' mortgage holder, U.S. Bank was an interested party which had not received notice of appellant's counterclaim.

sufficient length of time to bar a right of entry under the statute of limitations. (2) Agreement: The line must have been expressly agreed upon by the interested parties and afterwards acquiesced in. (3) Estoppel: The party whose rights are to be barred must have silently looked on with knowledge of the true line while the other party encroached thereon or subjected himself to expense which he would not have incurred had the line been in dispute.

*Theros v. Phillips,* 256 N.W.2d 852, 858 (Minn.1977). Because the effect of this doctrine is to divest parties of property they own by deed, the evidence establishing a boundary line by practical location "must be clear, positive, and unequivocal." *Id.*

◼ In the present case, appellant argues only that it has established a boundary by practical location by way of acquiescence. "To acquire land by practical location of boundaries by acquiescence, a person must show by evidence that is clear, positive, and unequivocal that the alleged property line was 'acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations.'" *Pratt Inv. Co. v. Kennedy,* 636 N.W.2d 844, 849 (Minn.App.2001) (quoting *Theros,* 256 N.W.2d at 858). The relevant statute of limitations in Minnesota is 15 years. Minn.Stat. § 541.02 (2010); *see also Allred v. Reed,* 362 N.W.2d 374, 376 (Minn.App.1985) (citing Minn.Stat. § 541.02 in practical-location case), *review denied* (Minn. Apr. 18, 1985). The burden of proof in boundary cases is on the party asserting the practical boundary. *Bjerketvedt v. Jacobson,* 232 Minn. 152, 156, 44 N.W.2d 775, 777 (1950).

◼ The acquiescence required is not merely passive consent but conduct from which assent may be reasonably inferred. *Engquist v. Wirtjes,* 243 Minn. 502, 507–

08, 68 N.W.2d 412, 417 (1955) (affirming no-practical-location finding absent evidence that disseized or predecessors recognized or treated a fence as a division line, or that disseizor or predecessors used the disputed land); *LeeJoice v. Harris,* 404 N.W.2d 4, 7 (Minn.App.1987) (no practical location by acquiescence when disseizor does not use disputed area for statutory period, even though disseized "tacitly consented" to boundary by failing to dispute a sightline). Typically, practical location by acquiescence "occurs when neighbors attempt to establish a fence as close to the actual boundary as possible, or when the disseizor unilaterally marks the boundary, and the disseized neighbor thereafter recognizes that line as the actual boundary." *Pratt,* 636 N.W.2d at 851; *see also Fishman v. Nielsen,* 237 Minn. 1, 5–6, 53 N.W.2d 553, 555–56 (1952) (finding practical location by acquiescence when parties and their predecessors in title built dividing fence as close as possible to actual boundary and remained satisfied with fence's location for statutory period); *Allred,* 362 N.W.2d at 376–77 (finding practical location by acquiescence when disseizor built fence with intent to be as close to boundary as possible and when disseized treated fence as boundary).

Appellant, both before the district court and now on appeal, points to a number of actions that it and its predecessors in interest took in seeking to determine the location of the boundary between Lots Four and Five, most notably constructing a fence that ran in the approximate vicinity of the boundary line. But appellant points to no evidence of respondents or their predecessors in interest acquiescing to such actions constituting the boundary between Lots Four and Five other than its statement that respondents "never assert[ed] ownership to the questioned land." Assent may not be reasonably in-

ferred from this passive conduct. *See Engquist,* 243 Minn. at 507–08, 68 N.W.2d at 417 (requiring more than passive consent to establish a practical-location boundary by acquiescence). Appellant's theory relies on outdated cases addressing the doctrine of adverse possession, which the legislature has explicitly precluded in the Torrens Act. *See* Minn.Stat. § 508.02 (providing that no title to registered land in derogation of that of the registered owner may be acquired by adverse possession). The district court therefore did not err by concluding that appellant had failed to establish the practical location of the boundary line between Lots Four and Five by acquiescence.

## DECISION

Because appellant failed to comply with the procedural requirements of Minn.Stat. § 508.671, the district court properly dismissed its counterclaim. Moreover, even if appellant had complied with the statute's procedural requirements, the district court did not err by concluding that appellant failed to establish a boundary by acquiescence by clear and unequivocal evidence.

**Affirmed.**